COMMONWEALTH *vs.* JESSE H. POMEROY.

Suffolk.    February 1. — 13, 1875.    COLT & MORTON, JJ., absent.

When the insanity of the defendant is relied on in defence to an indictment for mur
der, evidence of the defendant's subsequent acts or conduct is not admissible to
prove the existence of that condition at the time of the offence, except when so
connected with evidence of a previous state of mental disorder as to strengthen the
inference of its continuance at the time of the murder, or when they indicate un-
soundness of so permanent a nature as necessarily to reach back beyond that time.

At the trial of an indictment for murder the defence was the insanity of the defend-
ant, a boy fourteen years and five months old. There was evidence that the de-
fendant was arrested on the day of the homicide, and the next day admitted having

killed the deceased, but denied it the following day. He then had an interview with counsel and was committed to jail. The defendant offered evidence as to his acts, conduct and habits at the jail eight days after his arrest, as bearing upon the question of his sanity at the time of the homicide. The court, in its discretion, excluded the testimony, as relating to a time too long after the homicide and arrest to be material. At the hearing in this court of the defendant's bill of exceptions, setting forth the above facts, the defendant's counsel was allowed, for the purpose of having the exceptions amended, if necessary, to state that the acts which he offered to show were that the defendant ate with a hearty appetite, slept soundly and quietly, and in conversation and manner evinced no remorse or sense of guilt. *Held*, that the ruling of the court at the trial was to be construed as not based on the question of time alone, and that it necessarily had reference to the other considerations which affected the competency and materiality of the evidence. *Held*, *also*, that it did not appear from the bill of exceptions as allowed, that the acts, con duct and habits of which proof was offered were of any special significance as indicating mental disease, and that the exceptions must therefore be overruled. *Held*, *also*, that, if the acts stated by the defendant's counsel were taken into consideration with the other evidence set forth in the bill of exceptions, it did not appear that there was error of law or of judicial discretion in excluding the evidence.

On the trial of an indictment for murder, to which the defence was insanity, an expert, called by the government, testified, on cross-examination, that he had given the counsel for the government a statement in writing of his opinion of the defendant's mental condition. The statement was on request handed to the defendant's counsel, who offered it in evidence. The counsel for the government objected to its admission, and stated that he would only allow it to be used to frame questions for cross-examination. The court refused to allow the statement to be read to the jury, and the defendant's counsel used it to cross-examine the witness. *Held*, that the defendant had no ground of exception.

INDICTMENT for murder. Trial before *Gray*, C. J., and *Morton*, J., who allowed a bill of exceptions, in substance as follows :

The defendant, a boy of the age of fourteen years and five months at the time of the offence, was tried on an indictment for the murder of Horace R. Millen, a child four years old, committed at Boston on April 22, 1874. The prisoner was arrested on the evening of the same day. On the next day he was taken by the officers to view the body of his victim, and admitted having killed the deceased ; and on the afternoon of that day one of the trustees of the State Reform School talked with him privately at the station-house. On April 24 he was taken before the coroner's jury, where he testified, and denied that he killed the child ; and afterwards, on the same day, he had an interview with two lawyers, one of whom was of counsel for him at his trial. He was committed to the jail on May 1, where he remained until the time of his trial. The defence set up was the insanity of the prisoner.

The defendant called George B. Munroe, an officer of the jail, and also offered to call other officers at the jail, for the purpose of showing the acts, conduct and habits of the prisoner on and after May 1, as bearing upon the question of his sanity at the time of the homicide. The court, in its discretion, excluded the testimony, as relating to a time too long after the homicide and arrest to be material. The defendant seasonably alleged exceptions to this ruling.

A medical expert, called as a witness for the Commonwealth, who had examined the prisoner in jail at the request of the attorney general, and had heard the testimony at the trial, testified that in his opinion he was of sound mind at the time of the homicide. Upon cross-examination, he testified that he had given to the attorney general a statement in writing of the opinion which he formed upon his examination of the defendant. The defendant's counsel proposed to read that opinion and to put it in evidence, the same having been previously handed to him by the attorney general, upon request. The attorney general objected, and contended that it was under his own exclusive control, but offered to allow the defendant's counsel to use it for the purpose of framing questions in cross-examination, but not to read it to the jury or the witness.

The court ruled that, being a paper addressed to the attorney general by an expert employed by him to assist in preparing the case for the Commonwealth, the court should not compel its production or allow it to be used, except so far as the attorney general permitted. The defendant's counsel took no exception to the ruling at the time, and used the opinion in accordance with the permission of the attorney general, in conducting the cross-examination of the witness. At the close of the examination of this witness, neither party desiring to offer any further evidence, the court adjourned to the next morning, when the counsel for the defendant stated that he wished to reserve an exception to this ruling, and his exception was reserved, subject to the question whether the right so to except had not been waived.

The jury returned a verdict of guilty of murder in the first degree, and the defendant alleged exceptions, which were allowed " if and so far as they contain any matter as to which the defendant has the right of exception."

*C. Robinson, Jr.*, for the defendant. 1. Insanity is shown by the acts, declarations and conduct of the party; they are indications of his state of mind, and evidence thereof, both before and after the act done, is admissible. 2 Greenl. Ev. § 371. *Dickinson* v. *Barber*, 9 Mass. 225. *Beavan* v. *M'Donnell*, 10 Exch. 184. *State* v. *Hays*, 22 La. An. 39. *Grant* v. *Thompson*, 4 Conn. 203. *Bryant* v. *Jackson*, 6 Humph. 199. *McLean* v. *State*, 16 Ala. 672. *McAllister* v. *State*, 17 Ala. 434. *People* v. *March*, 6 Cal. 543. *Shailer* v. *Bumstead*, 99 Mass. 112, 120. It is therefore submitted that if evidence of acts, both before and after the time of the alleged offence, be admissible, the admission of such evidence cannot be a matter within the absolute discretion of the court; but if limited to a reasonable time, its admission is a matter of right. *Shailer* v. *Bumstead*, 99 Mass. 130. If this is not so, we have not a government of laws but of·men. And the life of a citizen might not depend upon the laws of the land, but the discretion of the particular judges before whom he should be tried. The limitation adopted in this case was too restrictive. In *Shailer* v. *Bumstead, supra*, the testatrix was an aged·person afflicted with paralysis, and in fifteen months might have become far advanced in dotage and incapacity; but in the case at bar the prisoner was a lad, and the same objection did not exist. In that case, if the testatrix had been a person of middle age and not afflicted with an active, physical disease, it is probable that the decision would have been otherwise. But even in that case, had the evidence excluded been of acts occurring only eight days after the making of the will, the opinion of the court leads to the inference that the ruling could not have been sustained. In the following cases a much larger latitude was allowed and approved. *Dickinson* v. *Barber*, 9 Mass. 225. *Beavan* v. *M'Donnell*, 10 Exch. 184. In *State* v. *Hays*, 22 La. An. 39, no limit was regarded between the time of killing and the trial. In *McAllister* v. *State*, 17 Ala. 434, it was decided that the exclusion of evidence of the prisoner's mental condition at the time of his trial was erroneous.

2. The statement of the medical witness given to the attorney general was not a privileged communication. It was not an account of facts, or of circumstances connected with the homicide. It was not one of the means of information for the discovery or

detection of an offender against the laws. It was, therefore, not within the rule. 1 Phil. Ev. *c.* 6. The statement excluded was only a previously expressed opinion of the witness. The rule of exclusion is to be applied no further than the attainment of public safety requires, and all opportunities should be given to discuss the truth of evidence given against a prisoner not prejudicial to the public interests. *Rex* v. *Hardy,* 24 Howell's St. Tr. 199, 808. 1 Greenl. Ev. § 250. The rule does not apply where the disclosure does not violate official confidence. Stark. Ev. (4th Lond. ed.) 193. In this case the government disclosed the secret, and by the passing of the paper to the defendant's counsel it was taken out of the rule, even if otherwise it had been within the principle of exclusion. It has been questioned by good authority whether the rule of exclusion is applicable to cases of ordinary prosecution. 1 Taylor Ev. § 862. In *Rex* v. *Hardy, supra,* Eyre, C. J., said that if it could be made to appear that it was necessary to the investigation of the truth that the name of the person who was the channel by means of which the detection had been made should be disclosed, he should be unwilling to stop the inquiry. The attorney general did not place his objection on the ground that the use of the paper would be injurious to the public service ; and if not so injurious, then the paper was not in " his exclusive control." A simple objection, but nothing more, is not sufficient. *Beatson* v. *Skene,* 5 H. & N. 838, 853. It is not possible to conceive how this disclosure of the written statement could prejudice the public interests.

3. The defendant, after the ruling of the court excluding the statement, did not waive any right of exception by subsequently availing himself of the permission to use the paper for purposes of cross-examination. It was all he could then obtain. The permission was not granted upon an express or implied waiver of any right by the prisoner. The concession of the attorney general was made before the court ruled upon the question. The question of waiver is not dependent upon the fact that the exception was not earlier claimed. The course of the trial was not varied by reason of the exception not having been immediately taken. Certainly, in favor of life, the prisoner should not be held to have unintentionally waived a right.

*C. R. Train,* Attorney General, *&* *W. G. Colburn,* Assistant Attorney General, for the Commonwealth.

WELLS, J.   Upon the question of sanity at the time of com mitting an offence, the acts, conduct and habits of the prisoner at a subsequent time may be competent as evidence in his favor. But they are not admissible as of course.   When admissible at all, it is upon the ground, either that they are so connected with or correspond to evidence of disordered or weakened mental con- dition, preceding the time of the offence, as to strengthen the inference of continuance, and carry it by the time to which the inquiry relates, and thus establish its existence at that time ; or else that they are of such a character as of themselves to indicate unsoundness to such a degree or of so permanent a nature as to have required a longer period than the interval for its production or development.

The interval is to be measured, not merely by length of time, but also with reference to intervening events.   These may be such as to account for the peculiarities manifested, either by showing a sufficient originating cause, or by furnishing other ex- planations.

It is for the court or judge presiding at the trial to determine, in the first instance, whether the facts offered to be proved would, if established, fairly justify any inference relating back to the time of the alleged offence.   This inquiry always and necessarily involves not only the question of intervening time and occur- rences, but also the character of the manifestations and the cir- cumstances under which they were observed.   It is, in a measure, a matter of judicial discretion ; insomuch, at least, that great weight and consideration will be accorded to the judgment of the judge whose decision is brought up for revision.   *Shailer* v. *Bum- stead*, 99 Mass. 112, 130.   *Commonwealth* v. *Coe*, 115 Mass. 481, 505.

It is for the party offering such evidence to establish its com- petency against the double, and, in this case, triple objection : 1st, that it is subsequent in point of time ; 2d, that it is the party's own conduct offered in his favor ; and 3d, that it is his conduct while under arrest, charged with the offence.   The de- fendant fails to show, upon his bill of exceptions, that the evi- dence offered and rejected was competent upon either of the two grounds defined in the first paragraph of this opinion.

If the ruling at the trial had been based solely upon the length of time that had elapsed, there would be ground for an argument, assuming the evidence to have been in other respects competent, that the period of only eight or ten days was too strict a limitation of its admission to be a reasonable exercise of the discretion which rests with the court. But the question does not admit of separation in that mode. The ruling as to the time necessarily had reference also to the other considerations which affected the competency and materiality of the evidence as a basis from which to infer unsoundness of mind at the time of the homicide. That the prisoner had been under arrest upon the charge for more than a week, and had had interviews with counsel and others, appears from the bill of exceptions. That the acts, conduct and habits, of which proof was offered, were of any especial significance as indicating mental disease, does not appear, and is not to be assumed against the ruling.

In a case of such vital consequence to the party excepting, we should be unwilling that any right should be lost to him by reason merely of an omission to state in detail the evidence which was offered. We have accordingly permitted the prisoner's counsel at the argument to make such statement of the evidence as he deemed necessary in order to present the whole question before us, with the view to allow an application to have the exceptions amended if the case should appear to require it. But we are satisfied that any such amendment would not avail him.

The evidence offered and rejected was, in substance, that the prisoner ate with a hearty appetite, slept soundly and quietly, and in conversation and manner evinced no remorse or sense of guilt. In the evidence relied on to show the mental condition of the defendant prior to the homicide, it is not contended that there were any marked indications of the existence of actual insanity, nor that, with the exception of an apparent absence of moral susceptibility, or want of moral sense, there was any relation or correspondence between the evidence preceding and that subsequent to the homicide, which gave to the latter any especial significance. We do not think, therefore, that a disclosure of the whole evidence would show that there was error of law, or of judicial discretion, in limiting the evidence of subsequent conduct on the part of the defendant, offered in his own favor.

The defendant is not entitled to the second exception alleged. First, because the paper offered in evidence, to contradict the witness upon the stand, was in the legal custody and control of the attorney general. It was in the hands of the prisoner's counsel at the moment only by the courtesy and permission of the attorney general, and for a special purpose. In the ordering of the course and proper conduct of the trial, the court refused to permit the prisoner's counsel to use the paper thus intrusted to him as an instrument of evidence, against the objection and in violation of the rights of the attorney general. The prisoner has no ground to complain of this. Second, because the counsel for the prisoner acquiesced in and availed himself of the offer of the attorney general, that he might use the paper for the purpose of framing questions in cross-examination of the witness by whom it was written and signed. We think the objection to the restriction upon its further use might fairly be regarded as waived.

We do not find it necessary to consider the question whether communications of like character are privileged from disclosure on the ground of public policy, or otherwise.

*Exceptions overruled.*