## JOHN WILLIAM APPLETON

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed February 14, 1898.*

1. CRIMINAL LAW—*instruction requiring defendant to "satisfactorily" establish matters of justification or excuse is erroneous.* One charged with murder, who does not deny the killing but relies upon matters in justification or excuse of the act or to reduce the crime to manslaughter, is not required to *satisfactorily* establish his defense, and an instruction requiring such a degree of proof is erroneous.

2. SAME—*error in instruction concerning self-defense is not cured by instructions concerning reasonable doubt.* Error in an instruction which imposes upon a defendant charged with murder a greater degree of proof in establishing matters of justification or excuse than the law requires, is not cured by instructions requiring the People to establish his guilt beyond a reasonable doubt.

3. SAME—*when not error to give instruction repeating, verbatim, section 149 of the Criminal Code.* The giving of an instruction repeating, *verbatim*, section 149 of the Criminal Code, (Rev. Stat. 1874, p. 375,) on self-defense, is not error if it is accompanied by another which states the law of justifiable homicide as laid down in section 148 of such code, or by others which correctly state the law of self-defense where the danger is not real, but apparent, only.

WRIT OF ERROR to the Circuit Court of Douglas county; the Hon. W. G. COCHRANE, Judge, presiding.

At the April term, 1897, of the Douglas county circuit court the plaintiff in error was indicted for the murder of one Winfield Scott Swartz, *alias* Winfield Scott DeNune, and at the October term of said court he was tried and convicted, the jury fixing his punishment at twenty-five years in the penitentiary. Motions for a new trial and in arrest of judgment were overruled, and judgment was entered on the verdict.

It appears upon an examination of the record that for some time prior to the killing plaintiff in error and deceased had each been engaged in the saloon business at Arcola, on Oak street, there being only three buildings between their places of business. Kate Appleton, wife

of plaintiff in error, was running and operating a restaurant midway between the two saloons, this restaurant being used as a home by the Appleton family, consisting of himself, wife and five children. Oak street runs north and south. The saloons front to the west, Appleton's saloon being one or two doors north of the restaurant, while the saloon kept by the deceased was two doors south of the restaurant. The deceased was shot and killed by plaintiff in error, at Arcola, in front of Kate Appleton's restaurant, on the night of April 20, 1897, near midnight. The city election took place in Arcola on the day preceding the night upon which the killing occurred, and both saloons had been closed on that day. About ten o'clock in the night, plaintiff in error, the deceased and two other parties were in the back room of the saloon of plaintiff in error, drinking. After indulging in a number of drinks the deceased insisted on plaintiff in error taking another drink, but he declined, and the two parties, after having some words, as the witnesses testify, "got into a scuffle," which resulted in both getting down on the floor. The other parties in the room left, and finally deceased and plaintiff in error became reconciled and went into the front part of the saloon to a looking-glass and re-arranged their collars and neckties. Soon after the scuffle Kate Appleton, the wife of the plaintiff in error, went to the saloon, and, after she learned what had occurred, the three parties left the saloon and went into the back part of the restaurant, and she put some oil on the bruises on the faces of the two parties. After this had occurred it seems that the three parties were on the street, and about eleven o'clock the city marshal came along and asked them if they had not gone to bed yet. Mrs. Appleton said she was trying to get her husband to bed, but Appleton replied that he was not going to bed until he had another drink. The deceased then invited the party to go to his saloon to drink, and in regard to what occurred at the saloon the marshal tes-

tified: "We all went into Swartz's saloon, and as they
went to take a drink Scott said, 'We fought them to a
finish, didn't we?' The defendant said, 'Yes; by God, you
can't fight me to a finish.' Scott says, 'Go and take a
drink.' Appleton kept getting louder and Mrs. Appleton
ran out, and the defendant kept after the deceased and
he kept backing out, and then the defendant hit him in
the face, and the defendant said, 'I want you to shoot
me,' and the deceased said, 'I don't want to shoot you.'
I opened the door and the defendant and myself went out,
and the deceased came and locked the door and walked
back about as far as the ice box, and came back and un-
locked the door and stepped out, and the deceased was
standing a little north and I was standing between them,
and the defendant started for the deceased, and the de-
ceased said, 'Don't take the advantage of me while I was
trying to lock the door,' and I said to the deceased, 'Give
me the key and I will lock it.' He handed me the key. I
locked the door and he stepped south, and I said, 'Come
on; I am going over on the west side,' and we started and
the defendant started after us. When we came to the cor-
ner the defendant backed Scott a little east. I said to
the defendant, 'Behave yourself, Bill; he don't want to
fight you.' We started away and the defendant followed
us into the street. I turned around and said, 'Bill, I have
told you my last time to go back.' He went away and we
went on west. I left Scott out there and he came back
to Matter's corner. I went home."

After the marshal left, the deceased returned, and he
and plaintiff in error were together several times on the
street. Cox, a witness for the prosecution, testified that
he saw them on the street at 11:40 o'clock. He testified:
"The deceased walked up to Appleton, the defendant, and
the first thing he said was, 'You are mistaken about that,
Bill.' Appleton said that he wasn't mistaken. There
were a few words passed back and forth, and the defend-
ant stepped in the street and said: 'I haven't anything;

I will settle it with you in a fair fight.' The deceased stepped back. He stood on the edge of the curbing—on the sidewalk. The defendant said: 'I know you have got a gun. I have more at stake in this than you have. I have a family. I will fight you a fair fight. I would rather die than have a man make a cur of me.' The deceased kept backing, with his hand in his pocket. Appleton came on, turned and went away, and went around the corner, and he said, 'I will make you eat that gun.' He went north on Oak street, towards the restaurant." Soon afterwards, it seems, plaintiff in error returned with a gun in his hand. He met the deceased, and after some conversation they agreed to submit the matter in controversy between them to Kate Appleton, wife of the plaintiff in error. They then went to the restaurant door and met Kate. Plaintiff in error set his gun inside of the door, and the parties had not proceeded but a short time with their statement when plaintiff in error called the deceased a liar. Immediately after that plaintiff in error went inside, picked up his gun and stepped out in front of the door. As he came out, with his gun in his hands, the deceased, as some witnesses testified, took hold of the gun. A struggle ensued, but in a short time plaintiff in error shot the deceased, who died soon after.

ECKHART & MOORE, E. L. WALKER, and MILLS BROS., for plaintiff in error.

E. C. AKIN, Attorney General, and JOHN H. CHADWICK, State's Attorney, (D. C. HAGLE, C. A. HILL, and E. N. RINEHART, of counsel,) for the People.

Mr. JUSTICE CRAIG delivered the opinion of the court:

It is first claimed in the argument that the court erred in giving the following instruction:

"If the jury believe, from the evidence, beyond a reasonable doubt, that the killing of Winfield Scott Swartz, *alias* Winfield Scott DeNune, has been proven as charged

beyond a reasonable doubt, then any defense which the defendant may rely upon in justification or in excuse of the act, or to reduce the killing to the grade of manslaughter, it is incumbent on the defendant satisfactorily to establish such defense, unless the proof arise out of the evidence produced by the prosecution."

The objection to the instruction is, that it requires too high a degree of proof on the part of the defendant. In *Herrick* v. *Gary*, 83 Ill. 85, it was held not to be necessary to a recovery that the evidence shall produce a belief in the minds of the jury so strong as to be satisfactory; that it is sufficient if they believe from the evidence, though it may not be entirely satisfactory. In *Graves* v. *Colwell*, 90 Ill. 612, it was held error to instruct the jury to find for the plaintiff unless the defendant has overcome the presumption by proof, to the satisfaction of the jury; that such an instruction is equivalent to requiring proof beyond a reasonable doubt, from the defendant. In *Alexander* v. *People*, 96 Ill. 96, it was held that when the killing is proved on a charge of murder, and the defendant seeks to show he was justified or excused, it is erroneous to instruct the jury that it is incumbent on him to establish satisfactorily such defense. The same doctrine was declared in *Wacaser* v. *People*, 134 Ill. 442, and *Smith* v. *People*, 142 id. 117.

Under the rule declared in the cases cited it is apparent that the instruction imposed on the defendant a greater degree of proof than the law imposes. Section 155 of the Criminal Code provides: "The killing being proved, the burden of proving circumstances of mitigation, or that justify or excuse the homicide, will devolve on the accused, unless the proof on the part of the prosecution sufficiently manifests that the crime committed only amounts to manslaughter, or that the accused was justified or excused in committing the homicide." This section of the Criminal Code in plain terms declares that the burden of proof is cast upon the defendant, but there

is nothing in the statute which requires a defendant, when he assumes the burden of proof, to satisfactorily establish his defense.    Here the defendant undertook to show that he was justified in committing the homicide.    He claimed that the deceased was armed with a gun, concealed in his pocket, and that he was in danger of being assaulted by the deceased in such a way that he might suffer bodily harm or lose his life unless he defended himself as he did.    Whether the evidence introduced on the trial was sufficient to justify the claim made by the defendant is a question upon which we express no opinion. That was a question for the jury.    But the defendant had the right to have that question fairly submitted to the jury.    But that was not done.    From the instruction the jury might well understand, from the use of the words "satisfactorily to establish such defense," that the defendant was required to go beyond the proof ordinarily required in a case of this character.    In a case of this kind circumstances of mitigation, or that justify or excuse the homicide, may be proven in the same way that any other fact may be established.

In *Alexander* v. *People, supra,* where an instruction was involved containing the same language as in the instruction in this case, in passing upon the instruction it was said (p. 102):    "The killing was proved, but the accused sought to show he was justified or excused in committing the homicide, and this instruction told the jury it was 'incumbent upon the defendant satisfactorily to establish such defense.'    The statute has not required him to so prove his defense.    He is only bound to prove the circumstances of mitigation, or that justify or excuse the homicide, as any other fact is proved.    *   *   *    A defense, though not satisfactorily proven, yet it might be supported by such proof as would produce grave doubts as to the guilt of the prisoner."

But it is said in the argument that the law requires the People to prove the accused guilty of the crime charged

beyond a reasonable doubt, before the jury are authorized to return a verdict of guilty, and that this was impressed upon the minds of the jury in such clear language and in so many different forms that the error in the instruction, if error it was, was cured.   It is true that in one instruction the court directed the jury that "if, after considering all the evidence, you should entertain a reasonable doubt as to the guilt of the defendant as charged in the indictment you will find the defendant not guilty," and in another the court instructed as follows:  "That it is incumbent upon the prosecution to prove every material allegation in the indictment as therein charged.  Nothing is to be presumed against the defendant.  The law presumes him innocent of the crime of which he is charged until he is proved guilty beyond a reasonable doubt, by competent evidence, and if the evidence in the case leaves upon the mind of the jury any reasonable doubt of the defendant's guilt of the crime charged, the law makes it your duty to acquit him."  Other instructions contain similar declarations, but we do not think they cure the error in the instruction complained of.  The objection urged against the instruction is not that it fails to announce the rule correctly in regard to the nature, character or quantity of proof required in behalf of the People to convict the accused, but the objection is that the instruction lays down an incorrect rule in regard to the evidence required of the defendant to establish a justification of the homicide, and no instruction has been called to our attention which has a bearing on this branch of the case.

It is also claimed that the court erred in giving instruction No. 15.   The instruction is copied from section 149 of the Criminal Code, but if it had been given alone or without any qualification it might be regarded erroneous, as held in *Roach* v. *People*, 77 Ill. 25.   But the instruction was preceded by No. 14, which states the law in substance as declared in section 148 of the Criminal Code, and it was expressly held in *Kinney* v. *People*, 108

Ill. 519, that an instruction embracing the two sections was not erroneous. Moreover, this court held in *Gainey* v. *People*, 97 Ill. 270, that it was not error to give section 149 of the Criminal Code as a separate instruction if it is modified by other instructions which correctly state the law of self-defense where the danger is not real but apparent. Here there were several instructions given by the court which lay down the doctrine of self-defense, as declared in *Campbell* v. *People*, 16 Ill. 17, and subsequent cases. We do not, therefore, regard the objection to the instruction as well taken.

Other instructions have been criticised, but it would extend this opinion to too great a length to consider the objections urged against them. We have carefully considered the objections, and deem it sufficient to say that the other instructions complained of are substantially correct. If, however, they contained technical inaccuracies, these can be obviated on another trial.

For the error in giving the instruction first considered the judgment of the circuit court will be reversed and the cause will be remanded.    *Reversed and remanded.*