(March 27, 1917.)

## STATE, Respondent, v. E. D. ROGERS, Appellant.

[163 Pac. 912.]

CRIMINAL LAW—INFORMATION—ADMISSION OF IMMATERIAL AND PREJUDICIAL TESTIMONY—ADMISSIBILITY OF THREATS—PREJUDICIAL ERROR—INSTRUCTIONS.

   1. *Held*, that the language of the information in this case is sufficient to charge the crime of which the defendant was convicted in the court below.

   2. Where upon a criminal trial counsel for defendant objects to certain testimony offered on behalf of the state, with regard to the

---

On the question of applicability of rule of reasonable doubt to self-defense in homicide, see notes in 19 L. R. A., N. S., 483; 31 L. R. A., N. S., 1166.

On evidence in a criminal case of threats of accused or of person injured or killed, see note in 17 L. R. A. 654.

use of vile language, and counsel for the state promises to thereafter connect such testimony with the defendant, but fails to do so, and there is no evidence in the record which connects the defendant with the use of such language, such testimony being highly prejudicial to the defendant, it is reversible error to allow such testimony to go to the jury.

3. In order to make an alleged threat of the defendant against the deceased admissible, it must appear from circumstances in evidence, with a reasonable degree of certainty, that the defendant directed the threat in question against the deceased before it can be admitted in evidence against him, and if the circumstances in proof leave this matter in doubt, that doubt must be resolved in favor of the defendant and the threat excluded.

4. That portion of an instruction in a trial for homicide which reads: "Malice includes not only anger, hatred and revenge, but every other unlawful and unjustifiable motive," is erroneous, as it tends to lead the jury to believe that they would be justified in finding that an act was done with malice if done in anger. Whereas a killing done in anger might amount only to manslaughter.

5. In an instruction in a trial for homicide wherein the court seeks to define the difference between the first and second degrees of murder, and uses the following language: "But while the purpose, the intent and its execution may follow thus rapidly upon each other, it is proper for the jury to take into consideration the shortness of such interval in considering whether such sudden and speedy execution may not be attributed to sudden passion and anger, rather than to deliberation and premeditation, which must characterize the higher offense," the giving of such instruction is misleading and erroneous, when read in connection with instruction No. 8 defining malice, in that it purports to include in the definition of murder in the second degree elements which tend to constitute only manslaughter.

6. The giving of the following instruction in a trial for homicide: "That if you believe, beyond a reasonable doubt, that the deceased was engaged in assaulting the defendant, then you may take into consideration the relative size and strength of deceased and the defendant," places the burden upon the defendant, which is without warrant in law, because it requires him to establish some element of his defense beyond a reasonable doubt.

7. In a trial for homicide the defendant is not required to establish circumstances in mitigation or that justify or excuse his act, either beyond a reasonable doubt or by a preponderance of the evidence, but is only bound to prove such circumstances as any fact is to be proven, and if the proof on the whole creates a reasonable doubt of the defendant's guilt, he is entitled to an acquittal.

8. In this case the court gave the following instruction: "The court instructs you, as a matter of law, that when the defendant testified as a witness in this case, he became as any other witness and his credibility is to be tested by, and subject to the same tests as are legally applied to any other witness; and in determining the degree of credibility that shall be accorded his testimony, the jury have a right to take into consideration the fact that he is interested in the result of the trial, as well as his demeanor and conduct upon the witness-stand, and during the trial, and whether or not he has been contradicted or corroborated by other witnesses or circumstances." This instruction is erroneous, in that it singles out the defendant as a witness and calls the attention of the jury particularly to the matter of his credibility. Instructions as to the credibility of witnesses should be general, and apply to all of the witnesses for the state and the defendant.

[As to admissibility of evidence of threats in prosecutions for murder, see note in 89 Am. St. 691.]

APPEAL from the District Court of the Fifth Judicial District, for Power County. Hon. J. J. Guheen, Judge.

Prosecution for murder. From a judgment of conviction, defendant appeals. *Reversed and remanded.*

O. R. Baum, W. G. Griswold and W. G. Bissell, for Appellant.

The court allowed the state, over the objection of the defendant, to cross-examine the defendant upon matters not testified to upon direct examination, which was reversible error. (*State v. Anthony,* 6 Ida. 383, 55 Pac. 884; *People v. O'Brien,* 66 Cal. 602, 6 Pac. 695; *State v. Saunders,* 14 Or. 300, 12 Pac. 441; *People v. Arrighini,* 122 Cal. 121, 54 Pac. 591; *Lewis v. Territory,* 7 Ariz. 52, 60 Pac. 694; Cooley's Constitutional Limitations, 5th ed., 386.)

The definition of malice in instruction No. 8 was erroneous; the court instructed the jury that, "Malice not only includes anger, hatred and revenge, but every other unlawful and unjustifiable motive." Mere anger does not of itself purport malice. (*Chandler v. State,* 141 Ind. 106, 39 N. E. 444.)

Instructions which in effect tell the jury that if they find there was no premeditation and deliberation, and that the kill-

ing was the result of and could be attributed to sudden passion and anger, then they should find defendant guilty of murder in the second degree, are clearly erroneous, for killing which can be attributed to sudden passion and anger is by our code especially made manslaughter. (Sec. 6565, Rev. Codes; *People v. Freel,* 48 Cal. 436; *State v. Vaughn,* 22 Nev. 285, 39 Pac. 733; *State v. Buster,* 28 Ida. 110, 152 Pac. 196.)

The burden of proof never shifts to the defendant to establish any part of his defense, either satisfactorily or beyond a reasonable doubt. (*Appleton v. People,* 171 Ill. 473, 49 N. E. 708; *Lovejoy v. State,* 62 Ark. 478, 36 S. W. 575; *People v. Perini,* 94 Cal. 573, 29 Pac. 1027.)

The defendant is never required to satisfy the jury of anything. If the evidence falls short of producing satisfaction and raises a reasonable doubt of defendant's guilt, he is entitled to an acquittal. (*Boykin v. People,* 22 Colo. 496, 45 Pac. 422; *Trogdon v. State,* 133 Ind. 1, 32 N. E. 725; *State v. Pierce,* 8 Nev. 291; *State v. McCluer,* 5 Nev. 132.) The defendant is never required to prove any of the facts constituting his defense beyond a reasonable doubt, and to so instruct is error. (*People v. McCann,* 16 N. Y. 58, 69 Am. Dec. 642; *Foley v. State,* 11 Wyo. 464, 72 Pac. 627.)

T. A. Walters, Atty. Genl., A. C. Hindman and J. Ward Arney, Assts., and Spencer L. Baird, for Respondent.

The direct examination of defendant was of such a sweeping character as to permit the state to go into all features of the case that were relevant and material, and the cross-examination of defendant by the state was entirely competent in its scope. (*State v. Larkins,* 5 Ida. 200, 47 Pac. 945; *State v. Anthony,* 6 Ida. 383, 55 Pac. 884; *State v. Gruber,* 19 Ida. 692, 704, 115 Pac. 1.)

The words charging the crime in the information did not actually prejudice the defendant or tend to his prejudice in respect to a substantial right. (*State v. Larkins,* 5 Ida. 200, 212, 47 Pac. 945.)

There is placed on the defendant the burden of affirmatively establishing that which defendant seeks to prove, i. e., justifi-

cation. (*People v. Milner,* 122 Cal. 172, 54 Pac. 833, 837; *People v. Matthai,* 135 Cal. 442, 67 Pac. 695; *Culpepper v. State,* 4 Okl. Cr. 103, 140 Am. St. 668, 111 Pac. 683, 31 L. R. A., N. S., 1166; *State v. Bogris,* 26 Ida. 587, 600, 144 Pac. 789; *State v. Webb,* 6 Ida. 428, 55 Pac. 892; *State v. Shuff,* 9 Ida. 115, 131, 72 Pac. 664.)

Error in one instruction does not constitute a ground for reversal when the other instructions of the case, considered as a whole, result in no prejudice to the defendant. (*State v. Bond,* 12 Ida. 424, 86 Pac. 43; *State v. O'Neil,* 24 Ida. 582, 135 Pac. 60; *People v. T. Wah Hing,* 15 Cal. App. 195, 114 Pac. 418.)

Instructions Nos. 7 and 8 properly advised the jury as to premeditation, and do not exceed the express decision of this court upon the point in *State v. Shuff,* 9 Ida. 115, 128, 72 Pac. 664; *People v. McDonald,* 2 Ida. 10, 1 Pac. 345.

Instruction No. 18, as given, is a *verbatim* copy of an instruction expressly approved in *State v. Shuff, supra,* an authority in this regard which has not been overthrown. The question in this sort of a case does not hinge on anger and passion, but on malice, premeditation and deliberation.

BUDGE, C. J.—Appellant was informed against on Nov. 29, 1915, for the crime of murder alleged to have been committed on or about June 24, 1915, in the village of American Falls, Power county. He was tried and convicted of murder in the second degree and sentenced to the penitentiary for not less than twenty nor more than forty years. A motion for a new trial was overruled and this appeal is from the judgment and from the order overruling the motion for a new trial. The charging part of the information reads as follows:

"That the said E. D. Rogers on or about the 24th day of June, 1915, in the village of American Falls, County of Power, State of Idaho, did then and there, in and upon one, Clyde Cross, feloniously, wilfully, and of his malice aforethought, did make an assault; and the said E. D. Rogers, with a certain knife, the said Clyde Cross then and there being feloniously, wilfully, and of his malice aforethought, did strike,

stab, and thrust, giving to the said Clyde Cross then and there with the knife aforesaid, in and upon the body of said Clyde Cross, four mortal wounds, of which said mortal wounds, the said Clyde Cross thence continually languished, until on the 25th day of June, 1915, in said County, he, the said Clyde Cross died; that the said E. D. Rogers in manner and form aforesaid, did then and there, feloniously, wilfully, and of his malice aforethought, kill and murder the said Clyde Cross."

Appellant attacks the sufficiency of this information and his first and second assignments of error are directed against certain alleged errors of punctuation. While it is true that the language of the information is awkward, we think it sufficiently clear to enable a person of common understanding to know what is intended—and this satisfies the requirements of sec. 7677, Rev. Codes.

Appellant's third assignment of error: "That the Court erred in overruling defendant's motion for a new trial," is well taken, as will appear from the discussion hereinafter contained concerning some of the alleged errors involved in appellant's other assignments of error.

Appellant's fourth assignment of error: "That the Court erred in permitting the defendant to be cross-examined concerning matters not testified to upon direct examination," particularly in so far as said cross-examination relates to matters testified to on behalf of the state by the witnesses Levi Jones, his wife and daughter, W. F. Glorifield and Walter Sherrod, is well taken. The reason for so holding will appear from the discussion of appellant's fifth assignment of error, which is as follows:

"That the Court erred in allowing the witnesses Levi Jones, Mrs. Levi Jones and Miss Stella Jones, W. F. Glorifield and Walter Sherrod to be examined upon immaterial matters."

In discussing the latter assignment of error it will be necessary to consider, first, the testimony of the Joneses; and, second, the testimony of Glorifield and Sherrod. It appears from the record that when the testimony of the Joneses was offered on behalf of the state and appellant interposed his objection, the prosecuting attorney promised to connect up the testimony

of the Joneses by other testimony, with appellant. It does not appear, however, from the testimony of any witness, or from any evidence in the record, that this testimony was ever in any way connected with the appellant, at least in so far as the same might be material to the issue in the case.

The testimony of the Joneses must be regarded as highly prejudicial to the appellant, for the reason that it leaves the insinuation that appellant was such a vile and loathsome character that he would use the language referred to specifically by the witness Levi Jones, in the presence of ladies. It is unnecessary to refer in this opinion to the exact language used as shown by the record; suffice it to say that the language is unfit to be spread upon the records of this court. As above indicated, there is no evidence in the record which in any way connects appellant with the use of said language, and to permit the witnesses to testify in regard to it could not, it seems to us, but have the most prejudicial effect upon the jury.

The testimony of Glorifield and Sherrod was highly prejudicial to appellant, and clearly inadmissible under the rule announced by this court in the case of *State v. Buster*, 28 Ida. 110, 152 Pac. 196, where the court said:

"The true rule is that the circumstances themselves in connection with the threat must, with a reasonable degree of certainty, establish the fact that appellant alluded to or directed the threat in question against the deceased, before it can be admitted in evidence against him; and, if the circumstances in proof leave this matter in doubt, that doubt must be solved in favor of the defendant and the threat excluded."

There is nothing in the record which would indicate in the remotest manner that appellant was insulting to or directing his remarks toward deceased when he made the alleged threats. In this connection we desire to call attention to the testimony of the witness Sherrod, which was in part as follows:

"Q. What did the defendant do at that time?

"A. Well, he come up, and he wanted to borrow my coat, and I says to him, I says: 'I will have to have my coat to hide my dirty shirt,' and he says to me: 'My shirt is dirtier than yours,' and picked up the coat and put it on.

"Q. What did you tell him?

"A. Well, I says to him: 'I don't care if you wear my coat, but be careful, and not get it cut up, like the scrape last night,' that was the first thing we heard of when we come to town, about the matter the night before.

"Q. What did he say?

"A. He says: 'If there is any cutting done, I will be there,' or something to that effect, or remark. He said it in a joshing way."

These statements of appellant cannot by any stretch of the imagination be said to allude to or to be directed toward deceased, or to constitute such a threat as would indicate that the appellant had deceased in mind when he made the statements; hence the testimony should have been excluded under the rule above quoted in the Buster case.

Appellant's seventh assignment of error relates to certain instructions given by the court which it is alleged by appellant are erroneous and prejudicial, and refers particularly to instructions Nos. 7, 8, 9, 10, 11, 18 and 30. We will confine this opinion to a discussion of instructions Nos. 8, 18, 9, 10 and 30, only. That portion of instruction No. 8 to which appellant takes exception reads as follows:

"Malice includes not only anger, hatred and revenge, but every other unlawful and unjustifiable motive."

We think this instruction should not have been given. As was said by Chief Justice Shaw in *Commonwealth v. York,* 9 Met. (Mass.) 93–104, 43 Am. Dec. 373:

"Malice, although in its popular sense it means hatred, ill will or hostility to another, yet, in its legal sense, has a very different meaning, and characterizes all acts done with an evil disposition, a wrong and unlawful motive or purpose; the wilful doing of an injurious act without lawful excuse."

The same opinion quotes the opinion of Mr. Justice Bailey, in *Bromage v. Prosser,* 4 Barn. & C. 255, giving the legal description of malice in contradistinction to the popular sense in which the term is commonly used, as follows:

"Malice, in common acceptation, means ill will against a person; but in its legal sense it means, a wrongful act, done intentionally, without just cause or excuse. . . . . "

The instruction as given was misleading, in that it would lead the jury to believe that they would be justified in finding that an act was done with malice if done in anger.    Whereas a killing done in anger might amount only to manslaughter, which is the unlawful killing of a human being without malice.

An examination of instruction No. 2 discloses the fact that malice was correctly and sufficiently defined by said instruction, and instruction No. 8 only added confusion to the definition there given, and while these instructions, standing alone, in and of themselves may not be sufficient to warrant a reversal of the case, yet when considered with other errors occurring upon the trial must be regarded as prejudicial.   Nor is it any answer to this objection to say that instruction No. 2 correctly stated the law upon the subject.   The result served to confuse the jury, and renders it impossible to determine whether in their deliberations they followed the law as correctly or as incorrectly set before them.   (*People v. Campbell,* 30 Cal. 312; *People v. Anderson,* 44 Cal. 65; *People v. Wong Ah Ngow,* 54 Cal. 151, 35 Am. Rep. 69; *People v. Messersmith,* 57 Cal. 575; *People v. Thompson,* 93 Cal. 506, 28 Pac. 589; *People v. Pearne,* 118 Cal. 154, 50 Pac. 376.)

In the 18th instruction given by the court, wherein the court was attempting to define the difference between murder in the first degree and murder in the second degree, we find the following charge:

"But while the purpose, the intent and its execution may follow thus rapidly upon each other, it is proper for the jury to take into consideration the shortness of such interval in *considering whether such sudden and speedy execution may not be attributed to sudden passion and anger,* rather than to deliberation and premeditation which must characterize the higher offense."   (Italics ours.)

While this instruction was approved by this court in *State v. Shuff,* 9 Ida. 115–128, 72 Pac. 664, the objectionable portion above italicized was not there discussed, and no objection appears to have been taken thereto.   However, the instruction was clearly misleading, in that it purports to include in the definition of murder in the second degree elements which

are present and tend to constitute only manslaughter. This distinction was clearly pointed out in the concurring opinion of Angellotti, J., in the case of *People v. Maughs,* 149 Cal. 253, 266, 86 Pac. 187–192, which concurring opinion was concurred in by Shaw and Sloss, JJ. The charge in the instruction there construed was essentially the same as the charge above quoted from instruction No. 18, in the case at bar. In his concurring opinion Angellotti, J., said: "The statements contained in this information would have been material in determining as between murder and manslaughter, but as between the two degrees of murder they had no place, and we are unable to say that they did not mislead the jury to the prejudice of the defendant." (*People v. Freel,* 48 Cal. 436; *People v. Crowey,* 56 Cal. 36; *People v. Kernaghan,* 72 Cal. 609, 14 Pac. 566; *People v. Bruggy,* 93 Cal. 476, 29 Pac. 26; *State v. Vaughan,* 22 Nev. 302, 39 Pac. 733.)

We will now discuss instructions Nos. 9 and 10, respectively, to which exceptions are taken. These instructions are identical in so far as the point involved is concerned. The particular charge complained of, is: "That if you believe beyond a reasonable doubt that the deceased was engaged in assaulting the defendant then you may take into consideration the relative size and strength of the deceased and the defendant."

Appellant urges that this instruction places a burden upon the defense, which is unwarranted in law, in that it requires him to establish some element of his defense beyond a reasonable doubt. We have made a very diligent search of the authorities bearing upon the charge used in this instruction; only one case has been found where a similar instruction was held not erroneous, which was the case of *Patterson v. People,* 46 Barb. (N. Y.) 625. The court there attempts to distinguish the case of *People v. McCann,* 16 N. Y. 58, 69 Am. Dec. 642, cited by appellant in the case at bar, and upheld the instruction complained of, requiring the defendant to establish the defense of insanity beyond a reasonable doubt. But the New York court, in the later case of *People v. Schryver,* 42 N. Y. 1–8, 1 Am. Rep. 480, where the same question was again presented, speaking through Earl, C. J., said:

"The judge presiding at the trial of this case is said to have followed in his charge the case of *Patterson v. People,* 46 Barb. (N. Y.) 625, in which, in a case of homicide, it was held in substance that the prisoner was bound to prove his justification beyond a reasonable doubt. No authority is cited to uphold this rule, and it is clearly against every authority that can be found in the books."

The early Massachusetts cases adhered to the doctrine that the killing being proven or admitted, the defendant to establish excuse or justification must do so by preponderance of the evidence. (*Commonwealth v. Webster,* 5 Cush. (Mass.) 295, 52 Am. Dec. 711; *Commonwealth v. Rogers,* 7 Met. (Mass.) 500, 41 Am. Dec. 458; *Commonwealth v. York,* 9 Met. (Mass.) 93, 43 Am. Dec. 373; *Commonwealth v. Knapp.* 10 Pick. (Mass.) 477, 20 Am. Dec. 534.) But the later cases in the same jurisdiction have relaxed the rule and have adhered to the more modern rule, that if the evidence of the defendant which tended to prove excuse or justification was such that taken together with the other evidence, the jury were left in reasonable doubt as to whether or not the defendant was guilty, they should acquit him. *Commonwealth v. Choate,* 105 Mass. 451, *Commonwealth v. Pomeroy,* 117 Mass. 143 (reported in Whart. Hom., 2d ed., Appendix), and cited in the opinion of Mr. Justice Harlan, in *Davis v. United States,* 160 U. S. 469–483, 16 Sup. Ct. 353, 40 L. ed. 499, in connection with the following quotation:

"It was contended by the prosecution that the question of sanity, raised by the defendant, was to be determined by the preponderance of proof; that the commonwealth was not bound to prove the sanity of the accused beyond a reasonable doubt. But the court said: 'The burden is upon the government to prove everything essential beyond a reasonable doubt; and that burden, so far as the matter of sanity is concerned, is ordinarily satisfactorily sustained by the presumption that every person of sufficient age is of sound mind and understands the nature of his acts. But when the circumstances are all in, on the one side and on the other; on the one side going to show a want of adequate capacity, on the

other side going to show usual intelligence,—when the whole is in, the burden rests where it was in the beginning, upon the government to prove the case beyond a reasonable doubt.' ''

In the case of *Commonwealth v. York, supra,* Mr. Justice Wilde wrote a very able dissenting opinion, holding that: ''The burden of proof, in every criminal case, is on the Commonwealth to prove all the material allegations in the indictment; and if, on the whole evidence, the jury have a reasonable doubt whether the defendant is guilty of the crime charged they are bound to acquit him.''

The dissenting opinion of Mr. Justice Wilde, *supra,* has been followed in the later Massachusetts cases and is now the law in that jurisdiction. (*Commonwealth v. Heath,* 11 Gray (Mass.), 304; *Commonwealth v. Choate, supra; Commonwealth v. Pomeroy, supra.*)

In the case of *Davis v. United States, supra,* the court, after reviewing the English, Massachusetts, New York, New Jersey, Illinois, New Hampshire, Michigan, Mississippi, Tennessee and Indiana cases, *Guiteau's Case,* 10 Fed. 161, and the previous cases in the supreme court of the United States, said:

''It seems to us that undue stress is placed in some of the cases upon the fact that in prosecutions for murder the defense of insanity is frequently resorted to and is sustained by the evidence of ingenious experts whose theories are difficult to be met and overcome. Thus, it is said, crimes of the most atrocious character often go unpunished, and the public safety is thereby endangered. But the possibility of such results must always attend any system devised to ascertain and punish crime, and ought not to induce the courts to depart from principles fundamental in criminal law, and the recognition and enforcement of which are demanded by every consideration of humanity and justice. No man should be deprived of his life under the forms of law unless the jurors who try him are able, upon their consciences, to say that the evidence before them, by whomsoever adduced, is sufficient to show beyond a reasonable doubt the existence of every fact necessary to constitute the crime charged.''

From our examination of the authorities we are convinced that the more modern and the better rule, and the rule which more nearly agrees with the fundamental principles not only of criminal law but of humanity and justice, is to the effect that the defendant is not required to establish circumstances in mitigation or that justify or excuse his act, either beyond a reasonable doubt or by a preponderance of the evidence, but is only bound to prove such circumstances as any fact is to be proved, and if the proof creates a reasonable doubt of the defendant's guilt, he is entitled to an acquittal, and the jury should be so instructed. (Cases in point, *supra; Alexander v. People,* 96 Ill. 96; *Appleton v. People,* 171 Ill. 473, 49 N. E. 708; *Trogdon v. State,* 133 Ind. 1, 32 N. E. 725; *Lovejoy v. State,* 62 Ark. 478, 36 S. W. 575; *Lewis v. State,* 29 Tex. App. 105, 14 S. W. 1008; *State v. McCluer,* 5 Nev. 132; *State v. Pierce,* 9 Nev. 291; *Boykin v. People,* 22 Colo. 496, 45 Pac. 419; *Foley v. State,* 11 Wyo. 464, 72 Pac. 627; *Culpepper v. State,* 4 Okl. Cr. 103, 140 Am. St. 668, 111 Pac. 679, 31 L. R. A., N. S., 1166; *McClatchey v. State* (Okl. Cr.), 152 Pac. 1136; *Smith v. State* (Okl. Cr.), 159 Pac. 668.)

The early California cases adhered to the doctrine that the defendant must prove such circumstances by a preponderance of the evidence. (*People v. Hong Ah Duck,* 61 Cal. 395; *People v. Raten,* 63 Cal. 422.) But these cases were expressly departed from and the modern rule above announced adhered to by *People v. Bushton,* 80 Cal. 160, 22 Pac. 127, 549. The California cases following *People v. Bushton, supra,* are reviewed briefly in the recent case of *People v. Petruzo,* 13 Cal. App. 569, 110 Pac. 325; see, also, *People v. Ribolsi,* 89 Cal. 492, 26 Pac. 1082; *People v. Perini,* 94 Cal. 573, 29 Pac. 1027; and also the discriminating case of *State v. Vacos,* 40 Utah, 169, 120 Pac. 497.

The more modern rule was followed by the Montana court in *State v. Crean,* 43 Mont. 47, Ann. Cas. 1912C, 424, 114 Pac. 603, citing *People v. Bushton, supra,* with approval.

This court in discussing a similar question indicated that an instruction requiring a defendant to establish justification or

excuse by preponderance of the evidence was erroneous. (*State v. Shuff, supra; State v. Webb,* 6 Ida. 428, 55 Pac. 892.)

As to instruction No. 30, we have to say that this instruction has no doubt been frequently given by trial courts of this state. Nevertheless, upon a careful examination of the language here used, and of the authorities, we are convinced that it is erroneous and prejudicial to the rights of the appellant. This instruction reads as follows:

"The court instructs you, as a matter of law, that when the defendant testified as a witness in this case, he became as any other witness and his credibility is to be tested by and subject to the same tests as are legally applied to any other witness; and in determining the degree of credibility that shall be accorded his testimony, *the jury have a right to take into consideration the fact that he is interested in the result of the trial, as well as his demeanor and conduct upon the witness-stand, and during the trial, and whether or not he has been contradicted or corroborated by other witnesses or circumstances."* (Italics ours.)

The words italicized, it is insisted by counsel for appellant, are prejudicial, for the reason that the defendant is singled out and the attention of the jury is particularly directed to his credibility as a witness. We think the better rule for the court to follow is not to single out any special witness personally and burden his testimony with any suggestions which might indicate to the jury that in the opinion of the court such witness was liable to testify falsely. Instructions as to the credibilty of a witness should be general, and apply equally to all of the witnesses for the state and the defendant alike. Because a witness may be the defendant is no particular reason why he should be visited with condemnation upon the one hand or clothed with sanctity upon the other. He is before the court as a witness and should be treated by both the court and the jury just as other witnesses are treated, no better and no worse. And the giving of such instruction cannot be regarded as otherwise than erroneous. (*People v. Maughs, supra; Fletcher v. State,* 2 Okl. Cr. 300, 101 Pac. 599, 23 L. R. A., N. S., 581; *Culpepper v. State, supra; Buck-*

*ley v. State,* 62 Miss. 705; *State v. Webb, supra; People v. Vereneseneckockockhoff,* 129 Cal. 497, 58 Pac. 156; 2 Thompson, Trials, 2d ed., sec. 2421; *Banks v. State,* 2 Okl. Cr. 339, 101 Pac. 610; *Crow v. State,* 3 Okl. Cr. 428, 106 Pac. 556.)

For the reasons above expressed we have reached the conclusion that appellant did not have the fair and impartial trial to which the laws of this state entitle him.

The judgment is reversed and the cause remanded, with instructions to the trial court to grant the appellant a new trial.

Morgan and Rice, JJ., concur.

Petition for rehearing denied.