[Criminal No. 819.   Filed April 1, 1935.]

[42 Pac. (2d) 613.]

ORMAN S. ROSSER, Appellant, v. STATE OF ARIZONA, Respondent.

Mr. Isaac Barth, for Appellant.

Mr. John. L. Sullivan, Attorney General, and Mr. Elmer C. Coker, Assistant Attorney General, for the State.

ROSS, J.—Appellant, Rosser, was charged by information, filed by the county attorney of Yavapai county, with first degree murder, and upon his trial was found guilty of manslaughter. From a judgment of conviction he appeals.

His first complaint is of the order of the court denying his motion for a new trial, on the grounds of newly discovered evidence. This motion, which was supported by his affidavit only, is to the effect that Louis Hagin and Robert J. Dorrough were present and saw the trouble between defendant and deceased; that he did not subpoena them as his witnesses because the state had subpoenaed them; that, although they were present at the trial, the state did not use them and he did not use them because he did not know what they would testify to; that his attorney, shortly before the trial, went to see them, and when he was told by Hagin and Dorrough they had been subpoenaed by the state, he concluded it would be improper for him to interrogate them as

to their knowledge, and therefore he did not ask them what they saw or knew of the trouble; that after the trial he learned through his attorney that the latter interviewed such persons and that their testimony would show he acted in self-defense, setting forth what such testimony would be.

Any evidence that was known by the defendant before his trial, or which might have been known by him in the exercise of ordinary care, is not newly discovered. By his own showing defendant knew the named persons were present at the time of the trouble. This was notice to defendant that they probably saw and heard what took place and should be witnesses. The defendant was entitled to a subpoena for their attendance, even though the state had subpoenaed them. *Halderman* v. *Territory*, 7 Ariz. 120, 60 Pac. 876. He would have violated no rule of ethics or law by interrogating them before the trial as to their knowledge. Presumably they would have told the truth, and, if his defense was honest and true, he would have run no risk in placing them on the stand, even though he had not interrogated them beforehand.

But, granting the testimony of Hagin and Dorrough is new evidence that could not have been discovered by reasonable diligence before the trial, their affidavits should have been produced at or before the hearing on the motion showing what their testimony would be and its materiality. This was not done.

For the reason that the showing was not of newly discovered evidence nor in conformity with subdivision 12, section 5097, Revised Code of 1928, the motion was properly denied.

Defendant assigns the giving of the following instruction as error:

"There is one rule of law, however, enacted by statute, to which I desire to call your attention: Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable.

"This burden cast by statute upon the defendant of proving mitigation, justification or excuse for the homicide, however, is only to the extent of raising in the minds of the jury a reasonable doubt as to whether the homicide was justifiable or excusable. In other words, it is rather a rule of procedure than one of substantive law."

for the following reasons: (1) Because it denied appellant his constitutional right to a fair trial and misled the jury, to appellant's prejudice; and (2d) it improperly placed the burden upon defendant to prove self-defense.

As the court stated in the instruction, it is taken from the statute (section 5050, Rev. Code 1928). It has been many times approved by this court. *Halderman* v. *Territory, supra; Bryant* v. *Territory,* 12 Ariz. 165, 100 Pac. 455; *Rameriz* v. *State,* 18 Ariz. 272, 158 Pac. 640; *Macias* v. *State,* 36 Ariz. 140, 283 Pac. 711. The suggestion that the instruction. misled the jury and deprived defendant of a fair trial can hardly be accepted as long as it is in accordance with the law. Our section 5050, *supra,* was borrowed from California (section 1105, Kerr's Pen. Code), and the decisions of that state have uniformly, we believe, held that an instruction in its words is applicable in all cases where the defendant "offers evidence in mitigation of the offense, that is, to reduce the degree of the crime; or in justification, as that it was in self-defense or in the lawful execution

of a death sentence; or in excuse, as that it occurred by accident and not design." *People* v. *Grill,* 151 Cal. 592, 91 Pac. 515, 516.

Under the decisions of this court and those of California, the instruction as to the burden of proof was correct and properly given to the jury. The last sentence of the instruction made it necessary that defendant only raise in the minds of the jury a reasonable doubt as to whether his action was justifiable or excusable. In other instructions given by the court the burden of proving, beyond a reasonable doubt, that the defendant's act was criminal, was placed upon the prosecution.

The next and last assignment is that the verdict is contrary to the evidence; it being contended that the evidence conclusively showed that defendant killed the deceased in necessary self-defense. There is perhaps no rule better settled than the one that makes decisive the verdict of a jury upon disputed or conflicting evidence. We have looked into the transcript of the testimony and are very well satisfied that, if the jury believed the evidence in behalf of the prosecution, which they had a right to do, it is substantial and sufficient to support their verdict. There is a sharp conflict, and it was for the jury to reconcile the evidence, if possible, or to accept or reject any part of it in arriving at their verdict. The homicide was committed at what is known as the Santa Fé Clubhouse on north Cortez Street in Prescott, at about 5 o'clock in the morning. This clubhouse, it seems, was a combined restaurant, saloon, pool hall and gaming house. There were present several persons, some five or six of them, among whom were defendant and the deceased, engaged in a card game. It appears that earlier in the evening a Mexican had been run over in the street near the clubhouse, and a man by the name of Arredondo ac-

cused the proprietor of the Santa Fé Club, Mike Mercello, of knowing who ran over the Mexican, but said he would not tell because the injured person was a Mexican. Thereupon a general fight ensued, and in the course of its progress the defendant went behind the bar and took from a drawer a pistol and shot and killed one Reyes Sanchez. The defendant offered evidence tending to show that he was being assaulted with deadly weapons, described as "billys" by said Sanchez and one Arredondo at the time he shot Sanchez. There was one witness who testified that neither the deceased nor Arredondo had a weapon at the time the fatal shot was fired. The weight of the evidence and the credibility of the witnesses was peculiarly for the jury to pass on.

The judgment of the lower court is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.