(No. 6702.   December 28, 1939.)

STATE, Respondent, v. JACK MARSHALL, Appellant.

[97 Pac. (2d) 657.]

Earl E. Garrity, for Appellant.

J. W. Taylor, Attorney General, R. W. Beckwith, E. G. Elliott, Lawrence B. Quinn, Assistant Attorneys General, and Donald Anderson, Prosecuting Attorney of Canyon County, for Respondent.

GIVENS, J.—Appellant was prosecuted for and convicted of the involuntary manslaughter of Jean Smith, aged 11. On his appeal two errors are assigned. First, that the trial court should have granted his application for a new trial on the ground of newly discovered evidence, proffering the testimony of one Stokesbury; and second, insufficiency of the evidence to support the verdict and judgment.

As ground work, the evidence herein fairly discloses that during the afternoon of December 14, 1937, appellant, married, accompanied by Mrs. Mabel Pierson, a young lady friend of his family, left Ontario, Oregon, by automobile for Homedale. Appellant had liquor with him on the way and at Homedale each drank a glass of beer and appellant bought a pint of whiskey. They then went to Parma where they had a glass of beer and then returned to Homedale. Upon starting from there for Ontario by way of Adrian and Nyssa, Oregon, Mrs. Pierson was driving and upon appellant insisting they go to Boise, they returned to Homedale and met Mr. Bowman, whom Mrs. Pierson, evidently and in part at least, because of appellant's intoxicated condition, asked to let her ride with him to Ontario. Thereupon appellant and Mrs. Pierson parted.

There was further evidence to the effect appellant drank whiskey at Homedale up to about 6 o'clock that evening and shortly thereafter alone in his car was driving towards Caldwell over wet pavement and between 6 and 6:30 P. M. some two miles southwest thereof collided with a car driven by Mrs. Jean Rowland Smith, rendering her unconscious for a time and resulting in the almost immediate death of her brother riding with her and the death at a hospital in Caldwell a few hours later of her 11 year old daughter Jean, likewise an occupant of the Smith car. Appellant was also severely injured and remained in a hospital for some months.

Three men were riding in a pick-up truck just before the accident and shortly west thereof going towards Caldwell, in the same direction appellant was traveling. He passed them at the rate of 50 to 60 miles per hour about 300 feet from the point of collision. The two occupants of the truck riding in the back thereof testified for the State as to watch-

ing the lights of appellant's car approach them, and his rate of speed and manner of driving in overtaking and passing them. (After the accident the speedometer of appellant's car was found stuck at 70 miles per hour.) The name of Stokesbury, the driver of the truck was endorsed on the information and he was subpoenaed by the State (a matter of public record) and present in the courtroom, but not called to testify and excused at the conclusion of the State's case.

After appellant's conviction Stokesbury when interviewed by appellant's counsel stated in effect appellant was driving on his (appellant's) right side of the road, not swerving and that Stokesbury did not see the Smith car or its lights approaching in the opposite direction until the instant of impact. The State's contention was that appellant was under the influence of liquor and on his wrong side of the highway at the time of the accident. Appellant's theory was Mrs. Smith had no lights (her bright lights did not function but the dimmers did and she alternately flicked the switch to ascertain if the bright lights would come on, and during such momentary transition there would be no lights) and was driving in the middle of the road.

Conceding Stokesbury's proffered testimony was not cumulative and was pertinent, relevant and material, the only excuse and showing of diligence for not having introduced his testimony at the trial was that appellant was so injured he suffered loss of memory of all events of the day of the accident and thereafter for several days, and his inability to have an exhaustive investigation made of the tragedy due to lack of funds.

Without dispute however, the record shows Stokesbury's name on the information; this was for the purpose of and was sufficient to notify appellant the State considered he knew something of the accident or its antecedents, and that he could and might be a witness and appellant may not therefore thus excuse his not finding out what Stokesbury knew, and now ask for a new trial on that score. (*State v. Mc-Manaman,* 120 Kan. 376, 244 Pac. 225; *Turner v. State,* 48 Okl. Cr. 74, 289 Pac. 1111; *Miller v. State,* 50 Okl. Cr. 28, 295 Pac. 620; *Whipp v. People,* 78 Colo. 134, 241 Pac. 534.)

Furthermore, Giddings, one of the two men in the rear of the truck above mentioned, testified at the trial for the State that Stokesbury looked after the little girl at the time of the accident. Appellant, since his presence in the courtroom is required in a felony trial, heard this and thus knew Stokesbury was at the scene of the accident. Stokesbury lived and was employed in Caldwell where the trial took place. Appellant needed no funds to interview Stokesbury the day of the trial and he claims no loss of memory or other infirmity on that day, and antecedent poverty or illness in no way prevented or excused him from not at the time of the trial interviewing Stokesbury.

The showing of diligence is entirely insufficient and inadequate. (*Livestock Credit Corp. v. Corbett,* 53 Ida. 190, 22 Pac. (2d) 874; *Montgomery v. Gray,* 26 Ida. 583, 144 Pac. 646; *State v. Bond,* 12 Ida. 424, 86 Pac. 43; *Stolz v. Scott,* 28 Ida. 417, 154 Pac. 982; *State v. McManaman, supra; Turner v. State, supra; Miller v. State, supra; Whipp v. People, supra; Johnson v. United States,* 32 Fed. (2d) 127; *Rosser v. State,* 45 Ariz. 264, 42 Pac. (2d) 613; *State v. Johnson,* 70 La. 1050, 129 So. 633; *Bryant v. State,* 172 Miss. 210, 157 So. 346; *Battles v. State,* 108 Tex. Cr. 511, 1 S. W. (2d) 888; *Brewster v. State,* 190 Ind. 83, 128 N. E. 465; *Rogers v. State,* 131 Tex. Cr. 658, 101 S. W. (2d) 255; *Williams v. State,* 186 Ga. 251, 197 S. E. 838.)

Appellant relies on the holding on the showing in *State v. Lumpkin,* 31 Ida. 175, 169 Pac. 939, as to the proposed witness Drus therein. The holding however, was not based on Drus alone but upon the showing as to two other desired witnesses, neither of whose names had been endorsed on the information and who were not present in the courtroom at the time of the trial and whose names, so far as the record discloses, had not been mentioned at the trial and were not shown to live where the trial took place. Thus that case is clearly distinguishable.

Appellant urges the only evidence as to his being the cause criminally of the accident is circumstantial and particularly as to the extent he was under the influence of intoxicating liquor at that time.

Acquaintances and friends of his in addition to Mrs. Pierson, testified as to his drinking and the state of his intoxication at Homedale and the evidence shows he drove more or less directly and continuously (though he failed to make one turn and drove off the highway and had to back up) from Homedale towards Caldwell, thus not to exceed a half hour elapsed between his drinking at Homedale and the accident and the distance is not to exceed 16 miles in all and about 14 miles to the scene of the accident from Homedale. (Among the exhibits was a map of the Wilder-Caldwell highway; the exhibits, map and photographs have been lost and are not before us, but we may consider the jury had, by means of such map, evidence of the distances involved. Wilder being between Homedale and Caldwell). Liquor bottles and bottles of liquor were found in appellant's car at the scene of the accident. The only evidence at all contradictory as to appellant's intoxicated condition was that of the doctor and nurses who attended him immediately after the accident and some four hours later at the hospital, that they detected no odor of liquor on his breath or in his vomit.

The reconcilement of such conflicts in the testimony as to Mrs. Smith's asserted contradictory, contradicted and self-accusatory extra-judicial statements were for the jury.

There was ample evidence to justify the jury in considering appellant was under the influence of liquor not only at Homedale immediately prior to but at the time of the accident, and to sustain the conviction of involuntary manslaughter, due to his consequent criminally negligent driving.

Judgment affirmed.

Ailshie, C. J., and Budge, Morgan and Holden, JJ., concur.