189 P.2d 372

### STATE v. SALHUS.

#### No. 7377.

Supreme Court of Idaho.

Jan. 9, 1948.

Rehearing Denied Feb. 11, 1948.

J. H. Felton, of Moscow, for appellant.

76

Robert Ailshie, Atty. Gen., and Earle W. Morgan, Pros. Atty., of Lewiston, for respondent.

GIVENS, Chief Justice.

Appellant was prosecuted for involuntary manslaughter on an information filed December 17, 1946, originally charging commission by negligent and careless driv-

ing of an automobile at excessive rate of speed, and while under the influence of intoxicating liquor, thereby colliding with another automobile, resulting in the death the same day of Neva M. Loudon, a passenger in the latter car.

The prosecutor, March 8, 1947, served appellant's attorney with a request to amend the information and add the names of 21 witnesses, with such proposals attached, noticed for March 17, 1947.

Appellant's demurrer that it did not conform to Section 19-1309-11, I.C.A., did not state particular circumstances and charged more than one offense, was overruled March 17 and appellant predicates error thereon, and that he was prejudiced by immediately going to trial where so many witnesses were added at such late date.

The amended information did not change or alter the charge of involuntary manslaughter, merely amplified the means and methods of its commission by adding: "driving on the wrong side and across the center line of the highway". Such addition as to the means and manner of the alleged commission of the offense, not only was not injurious to appellant, but was favorable; State v. Brooks, 49 Idaho 404, at page 408, 288 P. 894, directly refuted the demurrer and in line with the requirements of an information for involuntary manslaughter. State v. McMahan, 57 Idaho 240, 65 P.2d 156; State v. Goldizen, 58 Idaho 532, at page 535, 76 P.2d 278.

The amended information charged but one offense.

" 'Where a statute enumerates a series of acts, either of which separately or all together, may constitute the offense, all of such acts may be charged in a single count for the reason that, notwithstanding each act may, by itself, constitute the offense, all of them * * * do no more, and likewise constitute but one and the same offense.' People v. Gosset, 93 Cal. 641 29 P. 246." State v Brown, 36 Idaho 272, at page 276, 211 P. 60, 61.

"Appellant was charged with involuntary manslaughter, committed by driving an automobile in a reckless, careless, and heedless manner; driving while under the influence of intoxicating liquor not on his right side of the road, and at an excessive speed.

"Section 19-1313, I.C.A., 'The indictment must charge but one offense, but the same offense may be set forth in different forms under different counts, and, when the offense may be committed by the use of different means, the means may be alleged in the alternative in the same count,' expressly approves the charging of offenses in this manner, i. e., committed in one or more of several different ways, 31 C.J. 764-767, and not more than one offense is stated." State v. Monteith, 53 Idaho 30, at pages 33, 34, 20 P.2d 1023, 1024; State v. Carlson, 53 Idaho 139, at page 149, 22 P.2d 143; 99 A.L.R. 777; State v. Alvord,

46 Idaho 765, 271 P. 322; State v. Frank, 51 Idaho 21, at page 26, 1 P.2d 181; State v. McDermott, 52 Idaho 602, at page 612, 17 P.2d 343.

"* * * As was said in People v. Frank, 28 Cal. 507: 'Where in defining an offense, a statute enumerates a series of acts, either of which separately, or all together, may consitute the offense, all such acts may be charged in a single count; for the reason that, notwithstanding each act may, by itself, constitute the offense, all of them together do no more, and likewise, constitute but one and the same offense. * * * The information charged but one offense, and the demurrer was properly overruled." People v. Leyshon, 108 Cal. 440, 41 P. 480.

Appellant requested no continuance and has not shown how he was prejudicially affected by the amendment or adding of additional names, or because more were not used; hence, has no just cause of complaint in regard thereto. State v. Fleming, 17 Idaho 471, at page 481, 106 P. 305; State v. Stewart, 46 Idaho 646, at page 650, 270 P 140; State v. Dunn, 60 Idaho 568, at pages 572, 573, 94 P.2d 779; State v. Mundell, 66 Idaho 297, at pages 302, 303, 158 P.2d 818.

Appellant assigns as error claimed failure to plead after the amendment, relying on State v. Burwell, 67 Idaho 373, 181 P. 2d 197. Therein, after a demurrer was sustained, an amended information was filed. Herein, the demurrer was overruled and though an amended information was filed, there was no change in the charge as contained in the original or amended information, the charge remained the same; i. e., manslaughter. Thus, the effect of the interposed plea carried over in logical sequence without interruption by court action, traversing and putting at issue the persisting charge of involuntary manslaughter. That case is clearly distinguishable as the circumstances are entirely different from the situation herein.

After the jury was impaneled, the Clerk properly read the information and informed the jury of appellant's plea, so no prejudice is shown.

The minutes of the court affirmatively show that when the demurrer to the amended information was overruled, no extension of time for any purpose was asked or sought by appellant.

No objection of any kind was interposed when the Clerk read the information to the jury and stated the defendant's plea.

The court gave the substance of appellant's requested Instruction No. 2, that the defendant was there upon trial upon an information filed by the Prosecuting Attorney, then enumerated the four underlying traffic violations given in the amended information and proceeded as follows:

"To this charge the defendant has entered his plea of not guilty. This puts in issue every material allegation of the

information and makes it incumbent upon the State, before you can convict the defendant of the offense charged against him, to produce evidence to establish * * *,"

the alleged underlying traffic violations. Thus, appellant himself shows the amended information was before the court and jury and the one on which trial was had.

Likewise, the court instructed in the language of the amended information and in Instruction No. 3, substantially followed appellant's similar further request in Instruction No. 2. Neither Instruction No. 1 nor No. 3 is assigned as error.

The latest expression on a situation similar to the one herein is Herren v. State, 72 Okl.Cr. 254, 115 P.2d 258, at page 265:

" 'A conviction on an amended information will not be set aside on the ground that the defendant had not entered a formal plea to the information, where the defendant had been arraigned on the original information and where the defendant was placed on trial on said amended information before a jury in all respects as though he had entered his formal plea of not guilty.

" 'The rights of the defendant were not prejudiced by reason of the court directing the trial to proceed on the amended information, where there was no showing that the defendant was prejudiced in any way whatever by the action of the court in refusing to grant the defendant time to examine the amended information and directing the case to proceed to trial.'

"In that case the amendment was clearly one of substance, but this court sustained the conviction on the grounds that the amendment had not operated to prejudice the defendant."

See also the lengthy discussion concluding there was no prejudicial error in that case, similar to the case at bar in Thomas v. State, 17 Okl.Cr. 550, 190 P. 711 and 712, approved in Hamit v. State, 42 Okl.Cr. 168, 275 P. 361, at page 368, thus:

"It is next urged by the defendant that the trial court erred in refusing to give the defendant time in which to plead, and also in refusing the defendant's plea of acquittal of the crime of murder at the former trial of the same case. Defendant admits that he once entered a plea of not guilty to this information. The plea of not guilty was entered before the first trial of the case. The defendant insists that it was necessary for the defendant to plead again. This trial was continued on the theory that the defendant had pleaded not guilty. It is never necessary for a defendant to plead but once to the same charge, unless such plea has been withdrawn. A second plea was not necessary, as the first plea had not been withdrawn."

Also—

"As already stated, the defendant was arraigned on March 16, 1933, at which time the court, by reason of defendant remaining mute, directed the entry of a plea of 'not guilty.' Thereafter, and on March 28, 1933, an amended information was filed. So far as the homicide of which defendant stands convicted is concerned, the charging part of the amended information is identical with the original. There was added, however, a reference to the suffering by defendant of a prior felony conviction. On March 29, 1933, the defendant was arraigned on the amended information at which time he admitted having suffered the prior felony conviction. No other or additional plea was offered or received. At the conclusion of the prosecution's case, defendant moved for a dismissal on the ground that no issue had been joined under the amended information. The motion was properly denied. The homicide charge was identical in the original and amended informations. There was no necessity, therefore, for a repetition of the plea on the general issue. The cause proceeded to trial, and defendant at all times received the benefit of a plea of 'not guilty.' It follows that defendant's substantial rights suffered no detriment by reason of the failure to repeat the plea. People v. Thal, 61 Cal.App. 48, 51, 52, 214 P. 296; People v. White, 47 Cal.App 400, 403, 190 P. 821; People v. Tomsky, 20 Cal.App. 672, 678–686, 130 P. 184." People v. Hall, 220 Cal. 166, 30 P.2d 23, at page 25, 996.

On cross examination appellant, his wife, and Mrs. Edna Alvis, his companion on the fatal drive, were asked if they had not made statements outside of court a few days after the accident to and in the presence of the Prosecuting Attorney, his stenographer, and a Police Officer, when interviewed by the former relative to the accident, which were in conflict with or contradictory of the testimony given by them at the trial. Their answers were denials, affirmances in part or in whole, failure to remember and some evasions. The stenographer in the office of the Prosecuting Attorney testified that at the interviews she took the questions and answers down in shorthand and the transcribed record thereof was used by the Prosecutor on the cross examination and was likewise tendered the attorney for appellant. The stenographer then testified as to the statements given by the witnesses at the interviews.

Error is assigned because it is contended in several instances the claimed answers were not sufficiently contradictory of or inconsistent with the testimony in court to comply with the statute authorizing such method of impeachment. Section 16-1209, I.C.A. Specific objection was made by appellant to the underscored statements of the court in one ruling.

"Q. Question:

" 'And you got by him before you saw the car coming toward you?'

" 'A. I was pretty near him.' (Car passed by appellant just preceding the crash)

"Was that question asked and that answer given?

"A. I don't remember the question.

"Q. Question: 'Your left wheels were some distance over?'

"That, Mr. Salhus, is referring to the yellow line.

"A. Probably the center line was just inside my wheels, but no more than that.

"Was that question asked and that answer given?

"A. It may have been asked. I don't remember any part of it.

"Q. Question, referring to the lot in back of Jack's place:

" 'Were you there anything like five minutes?'

" 'A. It might have been five minutes.'

" 'Q. Ten minutes?'

" 'A. I don't think so.'

"Were those questions asked and those answers given?"

"Mr. Felton: That is in direct line with his direct examination again.

"The Court: *I think there is a difference.*

"Mr. Felton: There is no marked difference.

"The Court: *Well, there is a difference though.*" (Emphasis ours)

While appellant did not interpose an objection, the evident purpose of his interjection was of that nature and indicated he desired a ruling by the Court, and in so doing the Court had to pass upon whether or not there was sufficient contradiction in the questions and answers in the cross examination to warrant their admission and his statements were no more than such responsive ruling. The Court carefully confined such impeaching examination. Appellant also urges some of the contradictions were not material; but all pertained to the manner and method of defendant's driving the fatal car, his condition and attendant circumstances, and were germane to the accident and its antecedents. State v. Bush, 50 Idaho 166, at page 177, 295 P. 432. The court correctly limited the effect of such evidence in Instruction No. 15a:

"Impeaching evidence consisting of contradictory statements made by a witness other than a party to an action is hearsay and is admissible only for the purpose of showing that such witness may have testified falsely. It is not competent as proof of the issues involved, but only for such impeachment."

Objection is also made that the witnesses were not warned their extra-judicial statements might be used against them. No such requirement exists by statute or other-

wise in this State and there was no error in not thus advising them. The statements were voluntary. State v. McDermott, 52 Idaho 602, 17 P.2d 343.

Appellant assigns as error the following circumstances as improper impeachment by opinion evidence: (Witness Mrs. Boyd)

"Q. I will ask you whether or not at that time and place and in the presence of those persons, when Orville came back after he talked with the officer and me, someone asked what he told us, and if then and there Orville said that he didn't answer directly, and whether Gertie Salhus then made this statement in substance, or words to this effect: (referring to appellant) 'Wasn't drunk, Hell, he couldn't hardly stand up'?

"A. Yes, she did.

"Mr. Felton: If the Court please, I ask that the answer be withdrawn. I want to make an objection.

"The Court: State your objection.

"Mr. Felton: I want to make the objection as an improper impeaching question, and I want to make an argument. I have a case on the matter, your Honor.

"The Court: Have you got it there?

"Mr. Felton: I have a case which says that a matter of opinion isn't a matter upon which a witness may be impeached.

"The Court: Read the question.

(The reporter read the last question.)

"The Court: Objection overruled.

"Q. I will ask you whether just prior to this statement that Gertie Salhus made someone asked Orville what he had been asked by us at that time and place? Did someone ask Orville what he had been asked by us?

"Mr. Felton: If the Court please, I object to this as improper rebuttal and improper impeachment. He has asked the question and it has been answered. That is all they can do in impeachment.

"The Court: Are you trying to argue? He didn't mention the name of the defendant, and there might be a question there. The objection to that question will be sustained.

"Q. Prior to the time of this incident that you just talked about, in the yard, did you have any previous discussion with Gertie Salhus?

"A. Yes.

"Q. Where were you at that time?

"A. In Mrs. Cruickshank's dining room.

"Q. Dining room?

"A. Yes.

"Q. Now, how long previous to this incident that you just testified about a moment ago, were you in the dining room?

"A. Just a few minutes before.

"Q. Who was present in the room at that time?

"A. Mrs. Cruickshank, Gertie, and I.

"Q. Mrs. Cruickshank, Gertie and you?

"A. Yes.

"Q. At that time was there a discussion about Carlyle Salhus?

"A. Yes, there was.

"Q. I will ask you whether at that time and place and in the presence of those persons—

"Mr. Felton: (Interrupting) We will ask that the last question and answer be stricken. The words themselves must be in that and not be brought in by the witness.

"Mr. Morgan: It is preliminary.

"The Court: Read the question and answer.

(The reporter read the question and answer.)

"Mr. Felton: I ask to have that stricken because it is not proper, because what he may ask at that time is what was said. This question simply asks whether there was anything said. It might tend to connect the next answer with Carlyle Salhus.

"The Court: You may object to that when the time comes. Objection overruled.

"Q. I will ask you whether at that time and place, Gertie Salhus made this statement, or words in substance to this effect: 'When we were leaving Jack's Violet asked if she could ride with us, because she didn't want to ride with Carlyle, because when he is drunk he drives so fast.'

"Was such a statement made by Gertie Salhus at that time?

"Mr. Felton: Don't answer for a moment, please. If the Court please, may we have our objection to that as improper impeachment, as hearsay, and as an attempt to make proof of this just by hearsay testimony, inconsistent with the tenor of our law.

"The Court: I was going to give your instruction that you requested. Objection overruled.

"Q. Was that statement made?

"A. Yes.

"Q. I will ask you whether at that time and place Gertie Salhus also made this statement, in substance: 'The speedometer stuck at 65 miles. Of course, it could have been jarred over there, but probably not, because he usually drives 65 miles an hour down Main Street when he is drinking, and I've been along with him when he has done it'?

"Did she make such a statement?

"Mr. Felton: Just a moment before you answer. I object to that as an improper impeaching question, as hearsay, and as improper rebuttal.

"The Court: Overruled.

"A. Yes.

"Q. I will ask you whether at that time and place and in the presence of those same persons, Gertie Salhus made this

statement: 'Erven wasn't drinking. They offered him a drink and he refused it'?

"Did Gertie Salhus make such a statement?

"Mr. Felton: I object to that for the same reasons.

"The Court: Overruled.

"A. Yes.

"Q. I will ask you at that time and place and in the presence of those same persons, if Gertie Salhus made this statement, or a statement similar to this, in substance: 'Orville poured Melvin's whiskey out because Melvin had had enough?

"Mr. Felton: Same objection.

"The Court: Same ruling.

"A. Yes."

Such evidence was pertinent and responsive to the cross examination of Mrs. Gertie Salhus, appellant's sister-in-law, as previously given.

"Q. I will ask you whether at that time and place that you have just described, and in the presence of the persons you have just detailed, when and at the time that Orville came back after he had talked with the officer and me, someone asked him what he had told us, and if then and there Orville said that he didn't answer directly, and you then made this statement, in substance, words to this effect: 'Wasn't drunk, Hell, he couldn't hardly stand up'?

"A. I didn't say such a thing.

"Q. Prior to this particular time I asked about—for clarity, to make sure, if I didn't ask it in my question, the subject was Carlyle Salhus. He was the one they were talking about. Does that change your answer any?

"A. No, it doesn't change it.

"Q. Just prior to that time had you been in the dining room of the Cruickshank home?

"A. I was in there, yes.

"Q. Who was present?

"Mr. Felton: If the Court please, we object to this as immaterial.

"The Court: I suppose it is merely laying the foundation?

"Mr. Morgan: Yes, sir.

"The Court: Objection overruled.

"Q. Who was present?

"A. Mrs. Cruickshank and—

"Q. Mrs. Boyd?

"A. Yes.

"Q. Anybody else?

"A. No.

"Q. I will ask you—this is the same time?

"A. Yes.

"Q. I will ask you whether at that time and place in the presence of those persons in that dining room, you made this statement in substance, using these words: 'When we were leaving Jack's'

"Who is Violet?

"A. Carlyle's wife.

"Q. All right. Now, I will ask you whether at this time and place, you made this statement, or words, in substance, to this effect: 'When we were leaving Jack's Violet asked if she could ride with us, because she didn't want to ride with Carlyle, because when he is so drunk he drives so fast. If they had taken Violet, she would probably have been killed, because there wouldn't have been room enough for three in the front seat to have been kept from being killed'?

"Did you make such a statement at that time and place?

"A. I didn't.

"Mr. Felton: We object to that as being an improper impeaching question.

"The Court: Overruled. You may answer.

"A. No, I didn't.

"Q. Did you make a statement, in substance, or anything like that?

"A. No.

"Q. I will ask you at that time and place whether you also made this statement, in substance: 'The speedometer stuck at 65 miles. Of course, it could have been jarred over there, but probably not, because he usually drives 65 miles an hour down Main Street when he is drinking, and I've been along with him when he has done it.'

"Did you make such a statement?

"A. No, I didn't.

"Q. Did you make a statement anything like that?

"A. No.

"Q. I will ask you if at that same time and place and in the presence of those same persons, you made this statement: 'Erven wasn't drinking. They offered him a drink and he refused it.'

"Did you make such a statement?

"A. No, I didn't.

"Q. Or anything like that?

"A. No.

"Q. I will ask you if at that same time and place and in the presence of those same persons, you made this statement, or a statement similar to this, in substance: 'Orville poured Melvin's whiskey out because Melvin had had enough'?

"A. No, I didn't.

"Q. Did you make a statement like that?

"A. No, I didn't.

"Q. That is all."

The examination and cross examination involved statements made or denied and opinion evidence is admissible by laymen as to intoxication and drunkenness. Weber v. Della Mountain Min. Co., 14 Idaho 404, 94 P. 441; Herring v. Davis, 47 Idaho 211, 273 P. 757; Chamberlin v. George, 63

Idaho 658, 125 P.2d 307; Meinecke v. Intermountain Transp. Co., 101 Mont. 315, 55 P.2d 680; Am.Juris. p. 736, Sec. 876.

The evidence of Mrs. Boyd and that of Mrs. Cruickshank of similar import was admissible as impeachment, the effect thereof being limited by the court in the instruction hereinbefore noted.

Appellant assigns as error the refusal of the trial court to permit appellant to show prejudice on the part of State's witness Sid Brown by this question:

"Do you know of any reason why he (Sid Brown) would be prejudiced?"

In his brief appellant argues he is prepared to show Mr. Brown had had income tax trouble with him and also there had been trouble with the Salhus children running on Mr. Brown's lawn, but no such offer was made or intimation proferred as to what the evidence sought would be. Herring v. Davis, supra; Servel v. Corbett, 49 Idaho 536, 290 P. 200; Ball v. Stevens, 53 Idaho 111, 21 P.2d 932; Roddy v. State, 65 Idaho 137, 139 P.2d 1005. Likewise, as to the assignment that the court erred in not permitting as part of the *res gestae* the testimony of Edna Alvis that a bystander was trying to give defendant a drink immediately after the accident, and furthermore, the pertinency of such evidence is not shown in the slightest degree; consequently, there was no error in the rejections.

Assignment of error as to the remark following, made by the Prosecutor, is totally without merit:

"Q. That is all right. I don't think anybody respects a G.I. more than I do, but when did you first tell this story?

"Mr. Felton: We object to that and ask that that be stricken from the record.

"The Court: When he first told?

"Mr. Felton: I object to the remark and the tone of voice.

"Mr. Morgan: Just a moment. I don't care—

"A. This is the first time I have told what I seen except to Mr. Salhus.

"The Court: You have answered it. I will overrule it. He has answered it."

Upon rendition of the verdict, appellant asked that the jury be polled as to what particular wrongful act was the cause of death. The court denied such request, but ordered the clerk to poll the jury as the statute stipulates by calling the name of each juryman or jurywoman and asking if this were their verdict, all individually answering it was. The manner and method of the polling was in complete compliance with the statute, and was therefore, sufficient and it was not error not to poll the jury as to the detailed point urged by appellant. State v. Main, 37 Idaho 449, at page 457, 216 P. 731; Clark v. Commonwealth, 135 Va. 490, 115 S.E. 704, at page 706.

The jury was properly instructed on this point by Instruction No. 10.[1]

With reference to the assignment that the conduct of the Prosecuting Attorney cross examining as to appellant's condition as to being intoxicated immediately prior to the accident was improper, the question objected to was withdrawn and upon later impeachment no objection was made— hence, no error appears.

Remaining assignments of error involve the sufficiency of the evidence and instructions given and refused.

Requested Instructions Nos. 10,[2] 11[3] and 12[4] were amply covered as to proximate cause by Instruction No. 11[5] and what con-

[1] "It thus appears that the information charges the defendant with having violated the four statutes which I have hereinbefore set forth in these instructions.

"However, I instruct you that it is not necessary that you find him guilty of violation of each of said four statutes; but it is necessary in order to convict the defendant that the evidence convinces you beyond a reasonable doubt that he violated at least one of said statutes, and that all of you agree upon the specific statute which he violated, and agree that such specific violation was the proximate cause of the accident and resulting death of the said Neva M. Loudon."

[2] "It is unlawful for any person who is under the influence of intoxicating liquor to drive any vehicle upon a public highway within the State. Being under the influence of intoxicating liquor to some extent at the time of the accident is insufficient to sustain the further inference that the defendant's condition was such that he did not have possession of all of his faculties or that his driving while under the influence of intoxicating liquor was the proximate cause of the accident. These things must be further shown by the State beyond a reasonable doubt to warrant a conviction in this case."

[3] "It is necessary in this case, in order to convict the defendant, Carlyle Salhus, of manslaughter for you to find beyond a reasonable doubt that he was under the influence of intoxicating liquor to the extent that it impaired his ability to operate a motor vehicle, that he was driving recklessly at an excessive speed on the wrong side of the road and that such acts cause the death of Neva M. Loudon. In other words, he is not guilty of involuntary manslaughter unless his drinking and other acts were the direct and proximate cause of the death of Neva M. Loudon, without any intervening cause."

[4] "Your possible finding that the defendant was under the influence of intoxicating liquor is insufficient to support a conviction of manslaughter unless you shall further find that it precipitated some other wrongful act which caused the collision of the automobiles and the death of Neva M. Loudon. Proximate cause is that cause which, in a natural and continuous sequence, unbroken by any new cause, produces a certain event, and without which that event would not have occurred. It is the cause which directly produced the death of the deceased.

"You are then instructed that in order to convict the defendant of the crime of involuntary manslaughter by reason of intoxication the jury must unanimously agree and be convinced beyond a reasonable doubt, first, that the defendant committed the unlawful act of driving while under the influence of intoxicating liquor, and, second, that such unlawful act was the proximate cause of the death of Neva M. Loudon."

[5] "In a number of the foregoing instructions I told you that the perpetration or attempted perpetration of an unlawful act, or the commission of a lawful act which might produce death, in an unlawful manner, or without due caution

stitutes driving while under the influence of intoxicating liquor by Instruction No. 7.[6] State v. Scrivner, 66 Idaho 498, 162 P.2d 897; State v. Taylor, 67 Idaho 313, 177 P.2d 468; State v. Marshall, 61 Idaho 81, 97 P.2d 657; State v. Monteith, 53 Idaho 30, 20 P.2d 1023.

Instruction No. 13 unnecessarily elaborated the relative functions of the court and jury, and use of the Statute; namely, that "it is the court's duty to pass sentence and determine the punishment to be imposed and these are not proper matters for consideration by the jury." Section 17-106, I.C.A., would avoid criticism.

Requested Instruction No. 13 was not pertinent because the evidence herein was not circumstantial, but direct.

Requested Instructions Nos. 4, 5 and 6 were sufficiently covered by Instruction No. 12, though it could and should have been shorter. People v. Dewey, 2 Idaho, Hasb., 83, 6 P. 103; State v. Gilbert, 8 Idaho 346, 69 P. 62, 1 Ann.Cas. 280; State v. Nolan, 31 Idaho 71, at page 82, 169 P. 295; State v. Dong Sing, 35 Idaho 616, at page 630, 208 P. 860; State v. Bubis, 39 Idaho 376, 227 P. 384.

---

and circumspection, in order to constitute Involuntary Manslaughter, must have been the proximate cause of the death of a human being.

"A proximate cause is one from which the death of a human being was the ordinary and natural result and might reasonably have been expected to result from such a cause.

"In order to warrant a finding that a particular violation of a statute, or the perpetration of an unlawful act, or the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection, was the proximate cause of the death of a human being, it must appear that the death was the natural and probable consequence of the unlawful act, or the unlawful performance of a lawful act, and that such death was likely to result therefrom.

"The test generally used to determine whether an act was the proximate cause of an accident or death, is the question whether a man of ordinary experience and sagacity could or would have foreseen that the accident or death might probably happen or was reasonably to be expected to happen from such an un-

lawful act, or from such unlawful manner of performing a lawful act."

[6] "In connection with the foregoing instruction, I instruct you further that the statute above referred to, which makes it unlawful on the part of any person to drive a vehicle on the highways of this state while he is 'under the influence of intoxicating liquor,' applies not only to all well known and easily recognized conditions and degrees of intoxication, but applies as well to any abnormal mental or physical condition which is the result of indulging in intoxicating liquor to the extent of depriving the person of that clearness of intellect and control of himself which he would otherwise possess.

"If the driver of an automobile has imbibed intoxicating liquor to the extent that it has so far affected his nervous system, his brain or muscles as to impair to an appreciable degree his ability to operate the machine in the manner that he would or could operate the same if in the full possession of his faculties, he must be deemed to be under the influence of intoxicating liquor within the meaning of the said statute."

Instructions Nos. 3a,[7] 9,[8] and 11 [9] are assigned as error because it is claimed they stated the standard of driving under the two Sections of the traffic Statute referred to, was what a careful and prudent man would do under similar circumstances as at

[7] "You have been informed by the Clerk of this Court, and I have hereinbefore instructed you, that the defendant has entered his plea of not guilty of the charge contained in the Information. The defendant does not deny that the said Neva M. Loudon was killed as a result of the collision of the defendant's automobile, that is, the automobile he was driving at the time, with the automobile in which said Neva M. Loudon was a passenger. His contention, however, is that her death was due to accident and misfortune.

"I, therefore, instruct you that we have a statute which, so far as pertinent here, reads thus:

" 'Homicide is excusable in the following cases:

" '1. When committed by accident and misfortune, in lawfully correcting a child or servant, or in doing any other lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent.

" '2. * * * * *' (Sec. 17-1109, I.C. A.)

"Under this statute, I instruct you that before a homicide can be held excusable, four elements must be present: First, the homicide must have been committed by accident and misfortune; second, it must have occurred in the doing of a lawful act by lawful means; third, ordinary caution must have been observed by the person responsible for the killing; and, fourth, this person must have acted without any unlawful intent.

"If any one of these four elements is not present, the killing is not excusable.

"Stated in another way, when one person, having no unlawful intent, while engaged in the doing of a lawful act by lawful means, and using usual and ordinary caution, accidentally and fortuitously kills another, the homicide is excusable. But this law does not excuse a homicide committed by one engaged in

the commission of an unlawful act, or in the doing of a lawful act likely to produce death, in an unlawful manner, as will more fully appear in the succeeding instructions.

[8] "Again referring to the Information, you will observe that it charges the defendant with Involuntary· Manslaughter in that it alleges that he drove a motor vehicle at the time and place, in an unlawful manner, namely, 'negligently, carelessly and heedlessly, in wilful and wanton disregard of the rights and safety of others, and without due caution and circumspection, and at an excessive rate of speed, and in a manner so as to endanger person and property.'

"This charge is laid under a statute regulating the driving of vehicles upon the highways of this state, which reads as follows:

" 'Any person who drives any vehicle upon a highway carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving, and upon conviction shall be punished as provided in Section 48-559.' (Sec. 48-503, I.C.A.)

"You will notice that the statutes quoted in this and the preceding instructions do not define what shall constitute careless or heedless driving, or fix a rate of speed that shall be considered careful, and prudent, or prescribe what shall be considered due caution and circumspection. The statutes do, however, provide that the speed shall not be greater than is reasonable and proper when considered with reference to the traffic, surface and width of the highway and of any other conditions then and there existing.

"In other words, whatever the rate

variance with criminal negligence, which appellant argues is the criterion, relying on State v. McMahan, supra; and State v. Hintz, 61 Idaho 411, 102 P.2d 639. The court had previously instructed in 3a [7] in line with one theory of appellant's defense; namely, excusable homicide, appellant having admitted the resultant death thus:

"Mr. Felton: (Interrupting) If the Court please, if the purpose of this is to prove that the woman died as a result of the accident, we admit it."

In State v. McMahan, supra, the observations with regard to criminal negligence in manslaughter were in connection with the second part of Section 17-1106, I.C.A., namely, the commission of a lawful act without due caution and circumspection, and not with regard to the first portion; namely, perpetration of an unlawful act, which is the portion of the Sec-

---

of speed in miles per hour, the criterion whether it is careful and prudent, and reasonable and proper, or whether it is such as to endanger the life, limb or property of any person, must be determined with regard to the traffic, surface and width of the highway and other conditions then existing. What would be a reasonable, proper and prudent speed at one place and under certain conditions might be unreasonable, improper and imprudent, and such as to endanger life, limb and property, at another place and under other conditions or circumstances.

"The law leaves it to you to determine from the evidence in this case whether the defendant at the time and place drove the automobile heedlessly, and without due caution and circumspection, and in wanton and wilful disregard for the rights and safety of others, and at a speed and in such a manner as was likely to endanger any person or property, and the test that you should use in determining that issue or issues, is the question, Would an ordinarily prudent man have driven or operated an automobile, under like or similar conditions, at the same speed and in the same manner that the evidence shows the defendant operated his automobile at the time and place?"

9 "In a number of the foregoing instructions I told you that the perpetration or attempted perpetration of an un-

lawful act, or the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection, in order to constitute Involuntary Manslaughter, must have been the proximate cause of the death of a human being.

"A proximate cause is one from which the death of a human being was the ordinary and natural result and might reasonably have been expected to result from such a cause.

"In order to warrant a finding that a particular violation of a statute, or the perpetration of an unlawful act, or the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection, was the proximate cause of the death of a human being, it must appear that the death was the natural and probable consequence of the unlawful act, or the unlawful performance of a lawful act, and that such death was likely to result therefrom.

"The test generally used to determine whether an act was the proximate cause of an accident or death, is the question whether a man of ordinary experience and sagacity could or would have foreseen that the accident or death might probably happen or was reasonably to be expected to happen from such an unlawful act, or from such unlawful manner of performing a lawful act."

tion under which the information herein was drawn; i. e., the violation of four traffic statutes, reckless driving, driving while intoxicated, at an excessive speed, and on the wrong side of the road. In view of the instruction on excusable homicide, and the necessity of the State proving one or all of the underlying violations of the traffic statutes beyond a reasonable doubt as stated in Instruction No. 10, supra, before appellant could be found guilty of manslaughter and the instruction as to proximate cause, there was no prejudicial error because the charge is based upon the infraction of underlying traffic statutes and for reasons hereafter elucidated.

" * * * 'Of course, in this discussion, we have paid little attention to the first class of cases of involuntary manslaughter, viz., where one, while doing an unlawful act, accidently kills another; for in such case, the degree of negligence, if any, is not important. If the act is unlawful—that is, is forbidden by law, illegal, contrary to law—and the death of another results as a consequence of it, it constitutes involuntary manslaughter.' " Commonwealth v. Bergen, 134 Pa.Super. 62, 4 A.2d 164, at page 166. Commonwealth v. Aurick, 138 Pa.Super. 180, 10 A.2d 22.

California, considering a similar question under statutes like ours, referring to two Idaho cases, and applying and likewise considering the law with regard to excusable homicide as given herein, thus disposes of the matter:

"The defendant herein urges that the words 'driving in a negligent manner', as those words are used in the pertinent section of the Vehicle Code, read in conjunction with section 20 of the Penal Code, mean criminal negligence as defined in the Driggs and Hurley cases. Such, however, is not the law of this state. True, in every crime there must exist the union of act and intent or criminal negligence. But, in answering the question of what constitutes criminal negligence, the court is bound to apply an appropriate definition enacted by the legislature. Only when the legislature has not properly defined a term is it necessary for the courts to look to the meaning thereof as understood in the common law. 8 R.C.L. p. 60. Section 500 of the Vehicle Code makes criminal, that is, punishable (volume 2, Words and Phrases, First Series, Criminal, page 1741 [Vol. 10, Words and Phrases, Perm.Ed., page 477]), the negligent driving of a motor vehicle which causes injuries to another proximately resulting in death within the time specified in the section. This court has consistently refused to add to the words of pertinent statutes any formulæ clearly not included with the plain language thereof. At least as early as People v. Pearne, 118 Cal. 154, 50 P. 376, a case of involuntary manslaughter resulting from negligently driving a team of horses, the court held that on the facts the charge to the jury 'should rest upon the commission of an act done without due caution and circumspection', employing the language of section 192 of

the Penal Code. In denying a hearing in this court after decision by the District Court of Appeal in People v. Seiler, 57 Cal. App. 195, 207 P.396 (conviction of manslaughter growing out of the negligent driving of an automobile), this court expressly disapproved the use of the words 'wanton' and 'reckless', and indicated the inaptitude of the word 'culpable', in describing the idea to be conveyed by the phrase, 'without due caution and circumspection' used in the statute.

"In the case of People v. Wilson, 193 Cal. 512, 226 P. 5, 7, the charge of manslaughter also arose out of the negligent driving of an automobile. This court discussed the question of what want of due caution and circumspection is required to constitute criminal negligence. After noting the remarks of this court on denying the petition for hearing in the Seiler case, it was said: 'The proper rule deducible from the cases cited in the note above referred to (note following report of Johnson v. State, 66 Ohio St. 59, 63 N.E. 607, in 61 L.R.A. 277, 90 Am.St.Rep. 564) would seem to be this: That when a person is doing anything dangerous in itself, or has charge of anything dangerous in its use, and acts with reference thereto without taking those proper precautions which a person of ordinary prudence would have used under the circumstances and the death of another results therefrom his act or neglect is a criminal act against the person so killed even though his negligence does not amount to a wanton or reckless dis-

regard of human safety or life. Johnson v. State, supra, and notes; Reg. v. Doherty, 16 Cox's Crim.Law Cases, 306; Morris v. State, 35 Tex.Cr.R. 313, 33 S.W. 539.' The foregoing pronouncement has been applied in the following cases: People v. Anderson, 58 Cal.App. 267, 208 P. 324; People v. Thomas, 58 Cal.App. 308, 208 P. 343; People v. Crossan, 87 Cal.App. 5, 261 P. 531; People v. Marconi, 118 Cal.App. 683, 5 P.2d 974; People v. Frantz, 138 Cal.App. 499, 32 P.2d 670. Anything in the Driggs and Hurley cases [People v. Driggs, 111 Cal.App. 42, 295 P.51; People v. Hurley, 13 Cal.App. 2d 208, 56 P.2d 978] inconsistent therewith must be deemed to be disapproved.

"Decisions in other jurisdictions relied upon by the defendant, such as People v. Angelo, 246 N.Y. 451, 159 N.E. 394; Cain v. State, 55 Ga.App. 376, 190 S.E. 371; State v. Patterson, 60 Idaho 67, 88 P.2d 493; French v. State, 235 Ala. 570, 180 So. 594, either involve dissimilar statutory provisions or apply the rule relied upon by the defendant as the common-law rule applicable in the absence of statutory definition. For instance, in the case of State v. Patterson, supra, the defendant was charged with assault with a deadly weapon. A statute in Idaho contains the same requirement as our Penal Code, Section 20. The question involved was: What constituted criminal negligence in such a case? See, also, People v. Vasquez, 85 Cal.App. 575, 259 P. 1005. It may also be noted that a statute of Idaho defines involuntary manslaughter in substantially the same lan-

guage as section 192 of our Penal Code, and which, in cases of manslaughter occurring while driving an automobile in a lawful manner but 'without due caution and circumspection', has received an application similar to the approved cases in this state hereinabove cited. State v. Brooks, 49 Idaho 404, 288 P. 894, 896. In that case the court said: 'The Legislature has the power to declare what the law shall be on the subject, and, its definition of the offense of involuntary manslaughter having been stated to the jury, in effect, the law upon that point was sufficiently covered, and it was not error for the court to refuse to amplify thereon', citing, among other cases, People v. Fowler, 178 Cal. 657, 174 P. 892, and People v. Seiler, supra.

"Exhaustive research has been made into the question of what constitutes criminal negligence under the common law and as applied under statutes in other jurisdictions. See People v. Angelo, supra; note to Johnson v. State, supra; appendix to article, 'Negligent Homicide', 25 Calif.Law Rev. 1, 37. There is no controlling authority which would permit this court to apply any other rule or definition than that declared by the legislature and, with but slight and uncontrolling exception, recognized and followed in this state.

"Since the enactment of section 500 of the Vehicle Code, convictions on charges of negligent homicide have been upheld where the evidence disclosed the injuries resulting in death were caused by a failure to exercise ordinary care. People v. Pryor, 17 Cal.App.2d 147, 61 P.2d 773; People v. Warner, 27 Cal.App.2d 190, 80 P.2d 737, 739. In the last cited case the court expressly rejected the contention that the evidence must disclose facts indicating something more than ordinary negligence. It stated that 'it was only necessary to prove, other than the jurisdictional facts as to time and place, that the appellant was driving a motor vehicle in a negligent manner and that such driving resulted in the death of the person therein named'. The result in such cases appears to be harmonious also with section 195 of the Penal Code, which provides that homicide is excusable when it is committed by accident and misfortune in the doing of a lawful act by lawful means, with usual and ordinary caution and without any unlawful intent." People v. Pociask, 14 Cal.2d 679, 96 P.2d 788, at page 791.

"The proper rule deducible from the cases cited in the note above referred to would seem to be this: That when a person is doing anything dangerous in itself, or has charge of anything dangerous in its use, and acts with reference thereto without taking those proper precautions which a person of ordinary prudence would have used under the circumstances and the death of another results therefrom his act or neglect is a criminal act against the person so killed even though his negligence does not amount to a wanton or reckless disregard of human safety or life." People v. Wilson, 193 Cal. 512, 226 P. 5, at page 7. People v. Murray, 58 Cal.App.2d 239, 136

P.2d 389; See Vol. 25 Cal.Law Rev. No. 1, November 1936, p. 1.

"The court in instructing the jury should state propositions of law concisely and intelligibly so that the jury may understand without indulging in any fine-spun theories as to what the law is applicable to the facts of the particular case, and not give the jury instructions which tend to mystify and not to aid them in reaching a verdict." State v. Marren, 17 Idaho 766, 107 P. 993.

Instructions on manslaughter involving infractions of traffic laws have been given with subsequent approval in several cases: State v. Taylor, supra, (reversed only on instructions going beyond issues); State v. Marshall, supra; State v. Monteith, supra; State v. Brooks, 49 Idaho 404, 288 P. 894; State v. Gee, 48 Idaho 688, 284 P. 845.

In connection with Instructions Nos. 3a, 9 and 11, and the rejection of Requested Instruction No. 9, it is pertinent to consider the conceded and well nigh conclusive circumstances of the case. . . .

Though there is some conflict with regard to the extent to which appellant was intoxicated immediately preceding and at the time of the accident, and the exact speed at which he was then driving, between 25 and 60 miles per hour (the speedometer was stuck at 60) and there was an attempt to show it might have been thus jarred by the impact, and immaterial variances between some of the witnesses as to the exact time of the accident, which concededly took place about 1:15 a. m., the real course of events transpired substantially as follows:

Appellant and his wife, about 8:30 p. m., went to Mrs. Alvis' apartment for dinner, where appellant admittedly had a drink soon after their arrival. They left her apartment around ten or ten-thirty, taking the partly empty bottle of liquor with them, and went to Valley View, a club, where appellant had at least one drink and possibly two; they then went to Jack's Place, another club, and had another drink and danced. About twelve o'clock midnight, appellant and his wife and his companion on the fatal drive and other friends with whom they had been partying, decided they would go home. The question as to who would ride with whom was discussed; Mrs. Salhus rode with Erven Cruickshank and Mrs. Alvis with appellant. Appellant in getting out of the parking lot, by reason of the proximity of another car, had some difficulty backing out and there was evidence, though contradicted, that he fell on the way from the Club to the car and was staggering and gave indication of intoxication. He and his companion drove east on Main Street to where the street divides or to what is called the "Y"; they then turned around and proceeded west on Main Street and at or near the intersection of 12th Street and at a speed variously estimated by witnesses who saw the car and appellant himself, from 25 to 60 miles per hour, passed a car going west; i. e., in the same direction in which they were driving. This car con-

tained three high school students, two of whom testified that appellant in passing at 40 to 50 miles an hour, was so close his rear right bumper struck their left rear fender,—the appellant's car at that time being on his wrong side or to the left and over the yellow line and so continued until the collision. The car in which Mrs. Loudon was a passenger was coming east on Main Street and on its right or the south side of the yellow line and passed Brown, who was going east on Main Street about 12th Street, when he observed a car going west passing another car around 14th Street. This was appellant's car which passed other cars and headed directly for Brown's car, which he had pulled to the curb and brought almost to a stop. Appellant's car, going 40 to 50 miles an hour (as testified to by several), missed the Brown car only two or three feet and was entirely over the yellow line on his side, and collided with the eastbound car, sluing or skidding appellant's car almost at right angles to the street and the car being driven by the high school student, because of the speed of appellant's car and the suddenness of the impact, was not able to stop until it ran into the left rear of appellant's car.

State's Exhibit No. 2, a copy of which is set forth herein, was taken immediately after the collision and graphically portrays the damage to the two cars and their relative positions, showing the car in which deceased was a passenger remained facing east and from reference to the telephone pole and building on the south side of the street, on the south portion of the road; appellant's car being at right angles to and across the street. A strong odor of alcohol was detected in and about appellant's car immediately after the collision and there was likewise testimony of attending physicians and others at the Hospital where he was taken, that the odor of alcohol was strong on appellant's breath. State v. Marshall, 61 Idaho 81, at page 86, 97 P.2d 657. The only attempted explanation of this odor about the car was that appellant had just put alcohol in the radiator, the accident taking place on the 11th of August in Lewiston. It is obvious the jury had the right to take into consideration their knowledge of the climatic conditions in Lewiston in August and the court may likewise take judicial note of the fact the altitude at Lewiston is only about 600 feet and it is south of the 47th parallel of latitude north.

The above exhibit, disclosing the relative position of the cars immediately after the accident, the damage thereto, the position of appellant's car thrown crosswise of the street and the fact that the other car is over on the south or its right side of the street, still facing east, the direction of its travel, together with appellant's admissions of drinking, are sufficient to unequivocally establish appellant's guilt and to overcome any deviation from the norm in the instructions complained of, as thus tersely stated by Holden, J., in his concurrence in Hughes v. Hudelson, 67 Idaho 10, at page 21, 169 P.2d 712, at page 718:

"* * * the conduct of the driver, * * *, together with the surrounding facts and circumstances, disclosed by the record, are sufficient to put respondent on his proof."

The pronouncement in the following case is pertinent and controlling:

"* * * the evidence in this case is so clear and convincing of the guilt of the appellant that the jury could in no possible manner have been influenced to return a verdict of guilty by the objectionable matter contained in this instruction; and from the evidence the jury could not, without a violation of their oaths, fail to have found the defendant guilty, and because of this, the defendant could not have been prejudiced by the giving of such instruction.

"Rev.Codes, § 8070, admonishes this court: 'After hearing the appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties.' And, again, Rev. Codes, § 8236: 'Neither a departure from

the form or mode prescribed by this code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice in respect to a substantial right.' The substance of these statutory provisions [is] that a new trial ought never to be granted, notwithstanding some mistake or even misdirection by the judge, provided the revisioning court is satisfied that justice has been done and that upon the evidence no other verdict could properly have been found." State v. Marren, supra.

The doctrine in State v. Marren, supra, has been approved and upheld by later decisions of this court in State v. Lundhigh, 30 Idaho 365, at page 377, 164 P. 690; State v. Dong Sing, supra; State v. Cosler, 39 Idaho 519, at page 523, 228 P. 277; State v. Orr, 53 Idaho 452, at page 465, 24 P.2d 679; State v. Gilbert, 65 Idaho 210, at page 219, 142 P.2d 584.

The italicized clause in Instruction No. 15 —

"In weighing his (appellant's) testimony *you may take into consideration the interest which he has in the outcome of the case,* the manner in which he testified, and the probability or improbability of his testimony; in short, you should treat him the same as any other witness in the case, and subject him to the same tests, and only the same tests, that are legally applied to other witnesses who have testified in the case,"

while erroneous, State v. Rogers, 30 Idaho 259, 163 P. 912, was in part tempered by the latter part of the Instruction and obviated error: "* * * you should treat him (defendant) the same as any other witness in the case, and subject him to the same tests and only the same tests, that are legally applied to other witnesses who have testified in the case." State v. Rogers, supra. The standard as set forth in State v. Rogers should be adhered to. State v. Foyte, 43 Idaho 459, 252 P. 673; State v. Van Vlack, 57 Idaho 316, 65 P.2d 736.

No prejudicial error demanding a reversal appearing, the judgment is *affirmed.*

BUDGE, J., concurs.

SUTTON, District Judge (Special concurrence).

Since three of the four regular members of the court who heard this cause have written opinions, perhaps I will be pardoned for briefly stating my reasons for concurring in the affirmance of the judgment.

While appellant makes twenty-nine assignments of error, it is evident that he relies principally upon the first two assignments; for, after having discussed those two assignments, he says: "For the reasons outlined above, the conviction in the trial court will undoubtedly have to be reversed." By those assignments it is charged the court erred in failing to submit the

question of criminal negligence to the jury by appropriate instructions. In support of that contention, full reliance is placed upon State v. McMahan, 57 Idaho 240, 65 P.2d 156, and State v. Hintz, 61 Idaho 411, 102 P.2d 639, wherein it is stated in effect that Section 17-1106, I.C.A., defining the crime of manslaughter, must be read and construed with Section 17-114, I.C.A., which is undoubtedly a correct statement of the law as applied to the facts in those two cases.

It will be observed in the McMahan case the defendant was convicted of involuntary manslaughter "on the ground that he committed an act that might produce death, and did so without due caution and circumspection" [57 Idaho 240, 65 P.2d 159], and, in the Hintz case it was expressly declared that the defendant's acts were not in violation of Section 48-524, I.C.A., but on the contrary were within the exception contained in said section, i. e. that the defendant was not guilty of "any unlawful act." [61 Idaho 411, 102 P.2d 642.] Thus, as I understand these cases, the defendants were convicted under the last clause of Section 17-1106, I.C.A.; whereas, the defendant in this case was not charged with negligence, but with the violation of Sections 48-502, 48-503, 48-504, and 48-511, I.C.A., the violations of which are made punishable by the provisions of Sections 48-557, 48-558, and 48-559, I.C.A.

In my opinion the defendant was thus charged with the perpetration of four unlawful acts and the evidence is ample to warrant the jury in finding that he was in fact guilty of any one or all of said violations; that the death of Neva M. Loudon was occasioned by such unlawful act or acts on the part of the defendant, and that he is thus guilty of the offense charged. People v. Mitchell, 27 Cal.2d 678, 166 P.2d 10; People v. Barnett, 77 Cal.App.2d 299, 175 P.2d 237; State v. Cantrell, Wyo., 186 P.2d 539; People v. Wilson, 193 Cal. 512, 226 P. 5; People v. Von Eckartsberg, 133 Cal. App., 23 P.2d 819.

It is true intent or criminal negligence is a necessary ingredient of every crime (Sec. 17-114, I.C.A.); but, as was well said by the late Justice Ailshie, "This is true in the sense that the act must have been committed by the defendant voluntarily, and not under duress or acting under compulsion of superior force." State v. Henzell, 17 Idaho 725, 107 P. 67, 70, 27 L.R.A.,N.S., 159; State v. Browne, 4 Idaho 723, 44 P. 552; State v. Keller, 8 Idaho 699, 70 P. 1051.

MILLER, Justice (dissenting).

On the early morning of August 11, 1946, at Lewiston, Nez Perce County, Idaho, the appellant, Carlyle Salhus, while driving an automobile on the main street of said city collided with an automobile in which Mr. and Mrs. Tornow and Neva M. Loudon were the occupants, and from the collision and impact said Neva M. Loudon was mortally injured, resulting in her death on said 11th day of August, 1946. Appel-

lant was taken before a committing magistrate, to-wit, Elmer M. Roise, Probate Judge, charged with Involuntary Manslaughter, was given a preliminary examination and held to answer in the District Court of the Tenth Judicial District of the State of Idaho in and for the County of Nez Perce. December 17, 1946, an information was filed in the District Court by the prosecuting attorney charging appellant with Involuntary Manslaughter. January 6, 1947, appellant was arraigned in the District Court, waived the reading of the information and "pleaded not guilty" to the offense charged therein. February 19, 1947, an affidavit of prejudice having been filed by appellant, disqualifying the Hon. Miles S. Johnson, District Court Judge, the Hon. Charles F. Koelsch was called as District Court Judge to act in all proceedings then pending or thereafter to be had in the above entitled cause. March 8, 1947, filed March 10, 1947, the prosecuting attorney served and filed his notice for leave to file an amended information, with permission to endorse the names of additional witnesses thereon. March 17, 1947, the application to amend the information was granted. On said March 17, 1947, a demurrer to the amended information was filed and overruled.

There is nothing in the record to disclose that any plea to the new or amended information was made and entered and none such was made or entered. Section 19-1416, I.C.A., is as follows:

"If, on the arraignment, the defendant requires it, he must be allowed a reasonable time, not less than one day, to answer the indictment. He may, in answer to the arraignment, move to set aside, demur, or plead to, the indictment."
The record discloses that the provisions contained in the foregoing statute were wholly ignored.

After the jury was impaneled the clerk was instructed to read the information to the jury and state the plea of the defendant. The clerk read the information to the jury including the names of all the witnesses and informed the jury of the plea of appellant. There is no means of determining which information was read to the jury that is, whether the "original information" or the "new or amended information", nor is there any means by which it may be determined, except by inference, what the plea was. Appellant's plea, whatever it was and of which the jury was informed, was to the "original information" and not to the "new or amended information".

Since the majority opinion states that: "The amended information did not change or alter the charge of involuntary manslaughter, merely amplified the means and methods of its commission by adding: 'driving on the wrong side and across the center line of the highway' ", it may be advisable to show what insertions were included in the new or amended information that were not contained in the original information and which are- as follows:

"* * * and heedlessly in wilful and wanton disregard of the rights and safety of others, * * * and in a manner so as to endanger person and property, * * * and on the wrong side of the highway, to-wit: Onto and across the center line and onto the defendant's left of the center line of said highway."

The majority opinion, after inviting attention to the fact that the clerk read the information and informed the jury of appellant's plea, observed that "no prejudice is shown." The foregoing statement that no prejudice was shown is not supported by any authority.

The question of prejudice is not involved. We are considering mandatory procedural enactments of the legislature, and which were disregarded and discarded by the trial court. That appellant was "not prejudiced" is not a substitute for failure to adhere to statutory requirements.

The record shows: "The Court: The clerk may read the information to the jury and state the plea of the defendant. Whereupon the clerk read the information to the jury, including the names of all the witnesses, and informed the jury of the plea of the defendant.". It will be observed that it cannot be determined from what the clerk read, what the plea was and it will hereafter be noted how important it was for the clerk to state the plea substantially in the language of the statute. The majority opinion asserts that the plea to the orig-

inal information carried over and was a plea and effective to the new or amended information. When the amended or new information was filed the original information became a superceded pleading, was functus officio, mere surplusage and had no force or effect, and was no longer before the court. There is nothing in the record to the effect that the clerk "stated the defendant's plea", the record shows that the clerk "informed the jury of the plea of the defendant." It should be kept in mind also that whatever plea the defendant made, if any, was to the original information. Regardless of what may be said as to the state of the record, it is disclosed that no plea to the amended or new information was ever made and entered and the assertion in the majority opinion that the court, through its instruction, corrected the oversight for failure to require appellant to plead to the new or amended information is not justified. Any statement by the trial court to the effect that appellant plead to the information cannot be substituted for the mandatory provisions of Sec. 19-1610, I. C.A. The defendant in a criminal case is not charged with the responsibility of the state of the record. That function belongs to the prosecuting officers. Nor, should the defendant be penalized for their failure to make a proper record. See Hartenbower v. Mutual Ben. Life Ins. Co. et al., 67 Idaho 254, 175 P.2d·698; C. I. T. Corporation v. Elliott, 66 Idaho 384, 159 P.2d 891, and cases therein cited.

Section 19-1601, I.C.A., reads as follows:

"The only pleading on the part of the defendant is either a demurrer or a plea."

Section 19-1610, I.C.A., states:

"If the demurrer is disallowed, the court must permit the defendant at his election to plead, which he must do forthwith, or at such time as the court may direct. *If he does not plead, the plea of not guilty must be entered for him.*" (Emphasis ours)

There are four kinds of pleas. (Sec. 19-1612, I.C.A.)

"1. Guilty.

"2. Not guilty.

"3. A former judgment of conviction or acquittal of the offense charged, which may be pleaded either with or without the plea of not guilty.

"4. Once in jeopardy."

Section 19-1613, I.C.A., states what the forms of pleas must be, to-wit:

"Every plea must be oral, and entered upon the minutes of the court in substantially the following form:

"1. If the defendant pleads guilty: 'The defendant pleads that he is guilty of the offense charged.'

"2. If he pleads not guilty: 'The defendant pleads that he is not guilty of the offense charged.'

"3. If he pleads a former conviction or acquittal: 'The defendant pleads that he has already been convicted (or acquitted) of the offense charged by the judgment of the court of ———— (naming it) rendered at ———— (naming the place), on the ———— day of ————.'

"4. If he pleads once in jeopardy: 'The defendant pleads that he has been once in jeopardy for the offense charged (specifying the time, place and court).' "

Oklahoma's statutory procedural law in criminal actions is very similar to our own, and the case of Trent v. State, 66 Okl.Cr. 302, 91 P.2d 790, 791, is almost identical with the instant case. Because of the similarity of said cases we will refer to the Oklahoma case frequently, as we deem the history of the Oklahoma case very important in its application to the instant case. At the outset it is said:

"John T. Trent was by information charged in the District Court of Choctaw County with the crime of burglary in the second degree, was tried, found guilty as charged in the information, and his punishment fixed at two years in the State Penitentiary. Motion for a new trial was filed, considered, overruled, and the defendant appeals.

"The record discloses that after the information was filed against the defendant on the 28th day of September, 1936, the defendant was arraigned and entered his plea of not guilty; that on the 8th day of April, 1937, the State was granted permission to indorse the names of witnesses on

the information to be used against the defendant in his trial.

"It is shown by the record on the 24th day of November, 1937, the case was called for trial. The State being represented by M. W. Gross, County Attorney of Choctaw County, and the defendant appeared in person and by his attorney of record J. H. Warren. The county attorney asked permission of the court to amend the information by adding the following words: 'and to deprive the owner thereof.' The court granted the permission of the State to amend the information. The defendant moved the court to grant him time in which to plead to the amended information, which motion was overruled and exceptions allowed.

"The defendant then moved the court to permit him to withdraw his plea of not guilty heretofore entered, and file a demurrer to the information, as amended, which motion was overruled, and the defendant excepted.

"The defendant then tendered and offered to file a demurrer to the information as filed herein, which tender by the court was refused and exceptions allowed.

"After this proceeding was had, the record shows the defendant filed a motion for a continuance in order to get ready to meet the amended information, which motion was overruled, and the court ordered a jury drawn and the trial proceeded with."

But two assignments of error were considered by the court in the Trent v. State case, to-wit: "The court erred in overruling the application of the petitioner to file demurrer after amendment of information", and "The court erred in refusing to give petitioner in error time to plead after filing amended information."

The court then observed:

"It will be seen from the amendment permitted to the information by the court that it was an amendment of substance and not of form when the court permitted the words: 'and to deprive the owner thereof'. It is not stated in the motion of the county attorney or the order of the court allowing the county attorney to make the amendment, in what part of the information the amendment is to be inserted, leaving the information, by the words: 'and to deprive the owner thereof', indefinite, imperfect, and not specifically advising the defendant charged with crime, where in the information the words should be inserted."

We find the same condition exists in the instant case. There is no doubt but what the words " * * * and heedlessly in wilful and wanton disregard of the rights and safety of other, * * * and in a manner so as to endanger person and property, * * * and on the wrong side of the highway, to-wit: onto and across the center line and onto the defendant's left of the center line of said highway," contained in the amended information, and

which were not inserted in the original information, were amendments of substance and not of form and to which the appellant was not required or permitted to enter a plea, nor did the trial court (Sec. 19-1610, I.C.A.) enter a plea of not guilty for him.

Further quoting from the Trent v. State case, it is said:

"In this case we have a defendant brought before the bar of the court charged with a felony; and information had been filed against him; and he had plead to that information, not guilty. Later on, and on the day the case was called for trial, the county attorney asked permission of the court, and the court granted it, for him to file an amendment to the information; then it is shown that the defendant asked for time to plead to the information as amended; and the court denied him that right; and exceptions were duly saved. He then asked permission of the court to withdraw his plea of not guilty to the original information, and to be permitted to file a demurrer to the information as amended. This was denied him; and he offered to file a demurrer; and the court denied his offer. * * *

"In Bohannan v. State, supra [11 Okl.Cr. 69, 142 P. 1092], it is held that the filing of an amendment or a new information is the beginning of a new case, and the accused is always entitled to the statutory time in which to plead."

It is properly fitting to observe that the recitals by the court in the Oklahoma case plainly show that the information was amended by interlineation and which remained the information upon which the trial of the case was had. In the instant case the amendments proposed and allowed to the original information were not by way of interlineation but were by and through an entirely separate and distinct pleading thereby constituting a new information. Furthermore, the words of the amendment, inserted and included in the new or amended information, were words and amendments of substance.

The following statement by the Oklahoma court contains food for thought, and we think clerks also could well afford to familiarize themselves with their duties in connection with trials of criminal cases, to-wit:

"It is difficult to understand why a trial judge does not follow the procedure of his statutes and permit any pleading that is authorized by the statutes to be filed in order to avoid a controversy or a new trial. Judges are as much judges for the defendant as for the State, and are supposed to sit fairly and impartially between the rights of the State on one hand and the rights of the defendant on the other. To become a partisan either for the State or the defendant is to descend from the high position to which the judge is elevated and to assume the role of advocate."

In the case of State v. Gennis, 41 N.M. 453, 70 P.2d 902, 906, it is said:

"The impatience of the learned trial judge with defendant's demand for 24 hours' delay can easily be understood. He had been engaged for a week in the trial of other cases growing out of the same labor disturbances and had heard the State's witnesses give the same testimony repeatedly. Appellant's attorneys had represented other defendants. All concerned seemed familiar with the facts. However, this was a new cause, bearing a different number on the docket, and the information was a new pleading bearing the names of new witnesses. The appellant was entitled to the 24 hours demanded. 16 C.J. 389, 390; Bohannan v. State, 11 Okl.Cr. 69, 142 P. 1092; Dunkin v. State, 45 Okl.Cr. 203, 282 P. 692; State v. Jensen, 83 Utah 452, 30 P.2d 203; State v. DeWolfe, 29 Mont. 415, 74 P. 1084."

Questions as to whether a plea was made and entered, or the sufficiency of the minute entry thereof, or whether, if made, it conformed to statutory mandate, was thoroughly covered in the case of State v. Burwell, 67 Idaho 373, 181 P.2d 197, 199.

The majority opinion attempts to distinguish between the necessity of a plea in the case of State v. Burwell and the instant case, in that in the case of State v. Burwell the demurrer was sustained and an amended information filed, while in the instant case the demurrer was overruled. Said opinion then states, that though an amended information was filed there was no change in the charge as contained in the original or amended information, that the charge remained the same i. e., manslaughter. It would be immaterial to what extent the informations were amended. The charge in the original and new or amended informations would remain the same, independent of the number of amendments made and inserted as long as the amendments could be used as a contributing means to the offense charged. There was no change in the charge contained in the original or amended informations in the case of State v. Burwell. The change therein, as will be observed, did not change the offense and was as to a matter of form not substance, in that it was sought to make more definite and certain the date of the commission of the offense. The demurrer in said case was sustained on the ground "that it did not conform to Section 19-1310, I.C.A., in that the date of the commission of the offense was uncertain," and the change in the new or amended information was, accordingly, thus inserted.

The assignment of error in State v. Burwell, with which we are concerned, states, "2. That the defendant at no time entered any plea to the amended information on file herein, as required by Section 19-1612, I.C.A., for the year 1932."

Sections 19-1612 and 19-1613, I.C.A., are heretofore set out herein and Section 19-1613, provides, that the plea must be oral

and entered upon the minutes of the court in substantially the following form: "2. If he pleads not guilty: 'The defendant pleads that he is not guilty of the offense charged.' " In other words, the statement by the clerk that *the jury was informed of the plea of the defendant* means nothing because it can not be told therefrom what that plea was. A plea of former conviction or acquittal of an offense charged may be pleaded either with or without the plea of not guilty. Par. 3, Sec. 19-1612.

The majority opinion quotes from Herren v. State, 72 Okl.Cr. 254, 115 P.2d 258, 265, as the latest expression incident to a plea. The first two paragraphs of said quotation are taken from the case of Hill v. State, 46 Okl.Cr. 56, 287 P. 1080. The last paragraph states that in that case the amendment was one of substance, but the court sustained the conviction on the ground that the amendment had not operated to the prejudice of the defendant.

Herren v. State, supra is far distant from being in point in the instant case as an analysis thereof will disclose. The amendment of the information in the Herren v. State case, came at a time when the trial was in progress. The defendant therein was charged with receiving stolen property. Prior thereto others had been prosecuted for burglary involving the same merchandise. The amendment was by interlineation and was allowed by adding after the word "Brady" in the fourth line of the body of the charge "and others un-known" and then in the seventh line after the word "bacon" adding the words "coffee and syrup pepsin" and then in the ninth line after the word "Brady" adding the words "and others unknown to your county attorney." The defendant objected to the amendment in that it deprived him of the right to plead that he had never been arraigned and was a new charge and that he had had no preliminary examination of said charge. In said case we find [72 Okl. Cr. 254, 115 P.2d 262]:

" 'By the Court: I will overrule the objection and permit the interlineation of the information for the reason it is not a material variance. It does not change any of the dates, or any of the names of the defendant, or the names, it will not affect the witnesses in the least as the same witnesses would probably testify now as heretofore.' "

Oklahoma has a statute which reads:

"Section 2830, O.S. 1931, 22 Okl.St.Ann. § 304, is as follows: 'An information may be amended in matter of substance or form at any time before the defendant pleads, without leave, and may be amended after plea on order of the court where the same can be done without material prejudice to the right of the defendant; no amendment shall cause any delay of the trial, unless for good cause shown by affidavit.' "

Further quoting: "In applying this statute, our court has held that if the amendment is one of substance so that it charges

a new crime, or where the amendment has the effect of charging a crime where the information never had charged any offense prior to the amendment, that it was error for the court not to rearraign the defendant and give him the statutory time in which to plead to the new charge. Trent v. State, 66 Okl.Cr. 302, 91 P.2d 790; Potts v. State, Okl.Cr.App., 113 P.2d 839, not yet reported [in State Reports].'"

In the foregoing quotation is the case of Potts v. State and therein is cited the case of Little v. State, 21 Okl.Cr. 1, 204 P. 305, in which it is said:

"In prosecutions for felony by informations, no amendment to the information in the trial court is permissible, either before or after plea, which has the effect of charging an offense for which no preliminary examination had been given or waived by the defendant."

The majority opinion asserts that the new or amended information did not change the charge, that the charge remained "manslaughter."

The record discloses, through the trial court's instructions, that the new or amended information contains provisions from three separate and distinct Motor Vehicle offenses not included in the original information. It is likewise disclosed that the defendant did not have a preliminary examination or plead to the new or amended information and, while it may be true, that the amendments inserted in the new or amended information did not change the plea from that of "manslaughter" to some other felony, nevertheless, the state should have given the defendant a preliminary examination in order that the defendant might be informed as to what he would have to meet in the trial of the case.

It is a far cry from the charge in the original information to that in the new or amended information. The record shows that the provisions of three motor vehicle violations are included in the new or amended information while only one is contained in the original information to which appellant was given a preliminary examination and plead. There are four provisions of motor vehicle violations in the new or amended information, and for three of which appellant was not given a preliminary examination nor allowed to plead.

In the Potts v. State case that court quotes with approval from Kelly v. State, 12 Okl.Cr. 208, 153 P. 1094, 1097, in which it is said:

"Under the provision of the Constitution already quoted, the defendant in a criminal case has the right to be informed as to the acts which he has committed which constitute his supposed crime * * *."

The majority opinion also quotes from Hamit v. State, 42 Okl.Cr. 168, 275 P. 361, 368, in which it is pointed out that there was no error in refusing the defendant time to plead and also of refusing the de-

fendant's plea of acquittal to the crime of murder in a former trial of the same case. Syllabus 3, of said case is as follows:

"The granting of a new trial to defendant convicted of manslaughter upon an information charging murder is not a bar to another trial under same information for the higher offense."

The quotation shows that a plea of guilty was entered before the first trial of the case and that the defendant insisted that it was necessary for him to plead again. The court held that it was not necessary for defendant to plead but once to the same charge unless such plea had been withdrawn and that inasmuch as the plea had not been withdrawn a second plea was not necessary.

The majority opinoin also quotes quite at length from People v. Hall, 220 Cal. 166, 30 P.2d 23, 25, 996, from which it is shown that the defendant was arraigned on March 16, 1933, that he stood mute and the court entered a plea of not guilty. That thereafter on March 28, 1933, an amended information was filed; that the charge in the amended information remained identical with that of the original; that there was added a reference to the suffering by defendant of a prior felony conviction; that on March 29, 1933, defendant was arraigned on the amended information, at which time he admitted having suffered the prior felony conviction. No other additional plea was offered or received. At the conclusion of the prosecution's case, defendant moved for dismissal on the ground that no issue had been joined under the amended information. The motion was properly denied; there was no necessity for repetition of the plea on the general issue, as a plea thereto had already been made and since the defendant admitted the prior felony conviction, no plea thereto was required or proper.

State v. Wilson, 41 Idaho 598, 242 P. 787, in which a "plea" under the provisions of #8880 (now 19-1613) was considered and in which it is plainly indicated that the same must be in the form of the statute, it is said: "While this was an attempt to plead a former acquittal of the offense charged, it falls short of the statutory requirements of such a plea."

The case of People v. Corbett, 28 Cal. 328, 329, cited in State v. Burwell, and under an identical section and very similar facts, should be read in connection with the instant case. Among other things it is said:

"But neither the motion of defendant for a separate trial, nor the introduction of witnesses by him, nor the fact that the case was argued on his behalf to the jury —nor did all of them combined—cure the want of a plea. There was not only no arraignment, but over and beyond that, there was no issue for the jury to try. Not only did the defendant not plead, but inasmuch as the statute opportunity for pleading was never extended to him he was never under any obligation to plead. A

verdict, in a criminal case, where there has been neither arraignment nor plea, is a nullity, and no valid judgment can be rendered thereon. (Douglass v. State, 3 Wis. [820] 830; 1 Whar. Sec. 530.) * * *

"Where either of the two are wanting, it is as fatal as though both were wanting. The presence of both is essential to an issue, and where there is no issue an oath administered to the jury would impose no obligation, nor would false swearing on the part of witnesses amount to perjury."

Likewise, in the case of People v. Gaines, 52 Cal. 479, 480, cited in State v. Burwell, it is said:

"The record in this case, fails to show any issue which the jury was called upon to try. It is the business and duty of the prosecuting officer of the government, to move on the trial of criminal cases, and to see that the proper issue be made up. * * * a plea, an issue, is absolutely essential. Nor can we supply an issue corresponding to the verdict, when the record is entirely silent on the subject. * * * It would be a dangerous precedent to hold that the court could here supply an issue after verdict, or that the defendant had waived his right to a trial of an issue in which he himself had joined, when nothing appears upon the record to show that he had expressly waived such right. * * *

"Until the defendant had pleaded to the indictment, there was no issue to be sub-mitted to a jury, and the omission to plead is fatal to the judgment, even after verdict. (State v. Saunders, 53 Mo. 234; State v. Montgomery, 63 Mo. 296.)"

In the case of State v. Chambers, 9 Idaho 673, at page 678, 75 P. 274, 276, cited in State v. Burwell, after a citation of numerous authorities, this court held the statute mandatory, and in passing upon the question, said:

"If it be necessary to take the plea in order to have an issue to try, it seems to us that it must logically and necessarily follow that the jury should be informed as to what the charge against the defendant is and the nature of his plea thereto. Under section 7780, Rev.St. 1887, an issue of fact arises in a criminal case upon the defendant entering any one of three separate and distinct pleas. It would therefore seem to reasonably follow that the jury should be informed both of the charge made against the defendant and the nature and character of the plea entered by him. But whatever the reason may be, the question is fully answered by the statute. The Legislature have [sic] seen fit to say that the indictment must be read and the plea stated to the jury, and in the face of this declaration by the lawmakers we are not prepared to say that its violation is immaterial and can be disregarded."

In the case of State v. Crea, 10 Idaho 88, at page 95, 76 P. 1013, 1015, cited in State v. Burwell, it is said:

"It appears from the record that the information was not read to the jury and the plea of the defendant stated to them at the opening of the trial, and that omission is assigned as error. Section 7855 of the Revised Statutes of 1887 provides that: 'The jury having been impaneled and sworn, the trial must proceed in the following order: (1) If the indictment is for a felony, the clerk must read it and state the plea of the defendant to the jury. * * *'

"By the provisions of that section the Legislature has laid down the order of trial in a criminal case, and it provides that after the jury has been impaneled, if the indictment be for a felony, the clerk must read it to the jury and state the plea of the defendant to them. Said provisions are too plain and obvious to require construction, and this court held, * * * that said provisions were mandatory, and the omission to read the information and state the plea of the defendant to the jury was reversible error. The omission to read the information and state the plea of the defendant to the jury was gross carelessness on the part of the prosecuting officer, as a new trial must be granted, and much additional costs will be incurred in a retrial of this action."

It may be observed that within the distribution of powers the legislative department is charged with the enactment of laws for the trial of criminal cases, as well as other purposes. Such function belongs exclusively to the legislature and may not be exercised by any other department of state. Accordingly, it is not within the powers of the judicial department to enact, amend, or repeal criminal procedural laws, irrespective of the desired purpose. Just because it may serve a good purpose can not excuse or justify the making of a bad rule, even though seemingly desirable. When the good purpose has been served the bad precedent remains to serve bad purposes and the fundamentals of government are destroyed.

If the statement "and deprive the owner thereof," inserted in the information in the Trent v. State case, and by the court held to be words of substance, are measured by the words and amendments inserted in the new or amended information in the instant case, it would needs be admitted that the comparison is overwhelmingly in favor of the words and amendments in the instant case as being matters of substance rather than form. Furthermore, if an information charging involuntary manslaughter contained only the words and amendments inserted in the new or amended information, it would, under appropriate arrangement, state a public offense and would be sufficient, after trial, to withstand a motion in arrest of judgment.

This opinion is limited to such questions as have arisen in connection with the arraignment and plea, and the failure of the clerk to make a proper minute entry and to state the plea to the jury as required by statute. There being no plea, ob-

viously, there was no issue and the verdict and judgment were nullities. The judgment of the trial court should be reversed and the case remanded for a new trial.

I am authorized to state HOLDEN, J., concurs in this dissent.

HOLDEN, Justice (dissenting).

In the case at bar, the trial court instructed the jury:

"In weighing his [appellant's] testimony *you may take into consideration the interest which he has in the outcome of the case, the manner in which he testified, and the probability or improbability of his testimony;* in short, you should treat him the same as any other witness in the case, and subject him to the same tests, and only the same tests, that are legally applied to other witnesses who have testified in the case." (Emphasis added)

In State v. Rogers, 30 Idaho 259, 272, 163 P. 912, 916, Rogers challenged several instructions given by the trial court, among them the following:

" 'The court instructs you, as a matter of law, that when the defendant testified as a witness in this case, he became as any other witness, and his credibility is to be tested by, and subject to, the same tests as are legally applied to any other witness; and in determining the degree of credibility that shall be accorded his testimony, *the jury have a right to take into consideration the fact that he is interested in the result of the trial, as well as his demeanor and conduct upon the witness stand, and during the trial, and whether or not he has been contradicted or corroborated by other witnesses* or circumstances.' [Emphasis is that of the court in the Rogers case.]

"The words italicized, it is insisted by counsel for appellant [Rogers], are prejudicial, for the reason that the defendant is singled out and the attention of the jury is particularly directed to his credibility as a witness. We think the better rule for the court to follow is not to single out any special witness personally and burden his testimony with any suggestions which might indicate to the jury that in the opinion of the court such witness was liable to testify falsely. Instructions as to the credibility of a witness should be general and apply equally to all of the witnesses for the state and the defendant alike. Because a witness may be the defendant is no particular reason why he should be visited with condemnation upon the one hand or clothed with sanctity upon the other. He is before the court as a witness, and should be treated by both the court and the jury just as other witnesses are treated, no better and no worse. And the giving of such instruction cannot be regarded as otherwise than erroneous. [Citing cases]

"For the reasons above expressed we have reached the conclusion that appellant did not have the fair and impartial trial

to which the laws of this state entitle him." (Emphasis added)

This court, in State v. Rogers, supra, did not hold language to the effect that "you [the jury] should treat him [defendant] the same as any other witness in the case, and subject him to the same tests, and only the same tests, that are legally applied to other witnesses who have testified in the case", obviated or removed the error of the trial court in instructing the jury that "In weighing his [appellant's] testimony, *you may take into consideration the interest which he has in the outcome of the case."*

On the other hand, this court, in State v. Rogers, supra, held the instruction last above quoted was *"erroneous and prejudicial* to the rights of the appellant [Rogers]," and, while other instructions were also held to be "erroneous and prejudicial", this court reversed the judgment of conviction and ordered a new trial, holding Rogers *"did not have the fair and impartial* trial to which the laws of this state entitle him." (Emphasis added)

It will be noted in the second part of the instruction first above quoted, the trial court in the case at bar also instructed the jury it should treat appellant "the same as any other witness in the case", which, of course, the jury could not do, if, as the trial court expressly directed it to do, it gave special consideration to the interest appellant had in the outcome of the case, which interest no other witness could possibly have; hence the jury could not and evidently did not "treat him [appellant] the same as any other witness in the case".

Furthermore, once a jury has been told to closely scrutinize the testimony of a defendant because he is liable to testify falsely on account of his interest in the outcome of his case, nothing the trial court can say afterward will prevent the jury from believing a defendant will testify to anything to avoid conviction, just as the jury in the case at bar was, in effect, instructed to believe concerning appellant.

Therefore, I dissent.

I am authorized to state MILLER, J., concurs in this dissent.